496 So.2d 813 (1986)
THE FLORIDA BAR, Petitioner,
v.
James Albert DALE, III, Respondent.
No. 65894.
Supreme Court of Florida.
October 23, 1986.
Joseph J. Reiter, President, West Palm Beach, Ray Ferrero, Jr., President-elect, Ft. Lauderdale, John F. Harkness, Jr., Executive Director, John T. Berry, Staff Counsel and Mary Ellen Bateman, UPL Counsel, Tallahassee, and Robert M. Sondak, Chairman, Unlicensed Practice of Law Committee, Miami, for The Florida Bar, petitioner.
James Albert Dale, III, Gulf Breeze, in pro. per.
ADKINS, Justice.
Upon petition by The Florida Bar, this Court entered an order to show cause why respondent James Albert Dale, III, should not be enjoined from engaging in the unauthorized practice of law in Florida, and appointed a referee to evaluate the questions involved. Fla.Bar Integr.Rule, art. XVI. We have jurisdiction. Art. V, § 15, Fla. Const.
The Florida Bar's petition of September 14, 1984, alleged that Dale, while a member of the Mississippi Bar, was not "an active member of The Florida Bar in good standing" and should therefore be barred from the unauthorized practice of law in Florida under article II, section 2 of The Florida Bar Integration Rule. The petition contained the following allegations in support of the desired injunction:
1. On or about October 14, 1981, Bal Krishan Bahl and Abenamu Chaddah (hereinafter collectively referred to as "Bahl") sought to purchase property in Pensacola, Florida, known as the Palms Restaurant, owned at that time by Frank Barnes and represented through realtor *814 C. Roslyn Farrell. After preliminary study of the purchase agreement, Bahl said he wanted an attorney and accountant to protect his interest, but he had only recently arrived in Pensacola and knew no attorneys or accountants. Farrell and her associates recommended that Bahl seek the services of Respondent, d/b/a Dale Title Company, whom he contacted at Respondent's office... . Respondent, a member of the Mississippi State Bar, never informed Bahl that he was not licensed to practice law in Florida. Respondent confirmed to Bahl that his company would write the title insurance and, acting as closing agent, would allocate what documents should be prepared by each side and determine closing costs. Respondent further proceeded to give Bahl business and legal advice regarding the purchase, on which advice Bahl relied to his detriment, as he lost $100,000 on his investment.
2. Subsequent to October 14, 1981, but prior to October 28, 1981, the parties involved in the sale and purchase of the Palms Restaurant, including Respondent, held a meeting. At that time, Bahl learned in a private conversation with Jeffrey T. Sauer, a Pensacola attorney, that Respondent was not authorized to practice law in Florida and that he was charging what Sauer felt to be a rather exorbitant fee for title insurance. Some time thereafter, Bahl confronted Respondent with the information he learned from Sauer; Respondent admitted to its veracity and told Bahl not to tell anyone and that he would continue to advise Bahl as to the pending business purchase. In addition, to keep the closing in his title company, Respondent promised to Bahl before the closing and paid to him after the closing a rebate of approximately $700 on the title insurance premium charged and collected at the closing, which was conducted at Respondent's office.
3. On or about November 1, 1984, John Frank Jackson, District Vice President of Chelsea Title and Guaranty Company, 312 South Bayland Street, Pensacola, Florida, stated that he knew of two occasions when Respondent intentionally disregarded the law which prohibits title insurance companies from writing casualty insurance, and overlooked title defects in order to sell a title insurance policy. One of these occasions involved the sale of property for construction of a condominium project, which property contained a single residency restriction. Respondent accepted the customer and wrote a policy with no exceptions and no affirmative commitment. The other occasion involved a piece of property which listed two Federal tax liens. Respondent wrote a policy and with an affirmation statement acknowledged the existence of the Federal tax liens but stated that they could not be enforced due to its status as homestead property.
4. On or about August 29, 1980, Seigfried K. Kessler, a Fort Walton Beach attorney, conducted a business transaction which involved Respondent as the closing agent. Angie L. Alford and her husband, Grady Alford, owned property in Okaloosa County, Florida, on which they borrowed some money. Respondent, as Dale Title Company, executed the mortgage which described the property as Lot B, Block F, Seminole Subdivision, and the Chicago Title Company covered the title insurance. It was discovered that the property had been erroneously described, and a new corrected mortgage was filed showing the property as Lot 8, Block F, Seminole Subdivision. This corrected copy, dated December 9, 1980, bears a signature purported to be those of Angie L. Alford and Grady Alford and witnessed and notarized by Respondent. Later the mortgage holder attempted to foreclose, at which time Angie L. Alford said she had not signed the corrected mortgage. She admitted that a man had brought it by her house for signatures, but he arrived at an inopportune time when she could not sign it and when her husband was not home; the document was never returned for signatures. Based on this information, Attorney *815 Kessler denied that the mortgage was ever executed, but the ensuing law suit was never completed, as the house burned down and the insurance proceeds were used to cover payments.
5. On or about November 1, 1983, Irma Short, Realtor and Associate, Old South Properties, 1198 Gulf Breeze Parkway, Gulf Breeze, Florida, stated that she knew Respondent very well and further stated that on more than one occasion Respondent has made the statement, "When you come to Dale Title Company you get it all  an attorney and a title company  two prospective clients." Vern Redfern, a co-worker at Old South Properties, attended one of Irma Short's closings at Dale Title Company and indicated that he was left with the impression that Respondent was an attorney and assumed such until Irma Short informed him that Respondent was not an attorney licensed to practice in Florida.
After conducting hearings at which both parties presented evidence on the merits of the case and in mitigation, the referee found that Dale "did affirmatively represent that he was able and willing to render legal assistance and counsel to Bahl in connection with the purchase and sale" of the restaurant, while charging an exorbitant fee for his supposed title advice, and that the advice as given had adversely affected Bahl's important and substantial rights. See The Florida Bar v. Irizarry, 268 So.2d 377 (Fla. 1972).
We approve the findings of the referee in this case, The Florida Bar v. Mandel, 417 So.2d 647 (Fla. 1982); The Florida Bar v. Coastal Bonded Title Co., 323 So.2d 562 (Fla. 1975), but adopt only in part his recommendations as to the proper disposition of the case. Accordingly, we hold that from this point forward Dale is enjoined from either impliedly or expressly holding himself out as an individual licensed to practice law in the state of Florida. He is permanently enjoined from describing himself as a lawyer or attorney and is to remove all indicia of his status as a lawyer from public view in his title company offices. Finally, Dale is permanently enjoined from giving legal advice and counsel to others concerning real estate transactions or any other matters.
Judgment for costs in the amount of $3,384.25 is hereby entered against respondent, for which sum let execution issue.
It is so ordered.
McDONALD, C.J., and BOYD, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.