762 So.2d 392 (1999)
AMENDMENTS TO RULES REGULATING THE FLORIDA BAR-ADVERTISING RULES.
No. 92,297.
Supreme Court of Florida.
December 17, 1999.
Edith G. Osman, President, The Florida Bar, Miami, Florida, Howard C. Coker, Past-president, The Florida Bar, Jacksonville, Florida, John F. Harkness, Jr., Executive Director, Paul F. Hill, General Counsel and Elizabeth Clark Tarbert, Ethics Director, The Florida Bar, Tallahassee, Florida; Cynthia A. Everett, Chair, Rules Committee, Miami, Florida; Benjamin H. Hill, III, Chair, Joint Presidential Task Force on Advertising, Tampa, Florida; Timothy P. Chinaris, Jacksonville, Florida; C. Rufus Pennington, III of Margol & Pennington, Jacksonville, Florida; and Barry Richard of Greenberg, Traurig, P.A., Tallahassee, Florida, and Benjamin H. Hill, III of Hill, Ward & Henderson, Tampa, Florida, on behalf of The Florida Bar, for Petitioner.
Wilson Jerry Foster, Tallahassee, Florida; F. Wallace Pope, Jr. of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, Clearwater, Florida, on behalf of Leonard A. McCue & Associates d/b/a "Q Auto & Injury Attorneys"; Mark S. Gold of Gold & Associates, d/b/a The Ticket Clinic, Fort Lauderdale, Florida; W.F. "Casey" Ebsary, Jr., Tampa, Florida, on behalf of Lawgroup, P.A.; H. Louis Sirkin and Laura A. Abrams of Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, Ohio, on behalf of The Debt Relief Law Center, Feinberg, Isaak & Smith, Attorneys-at-Law; George K. Rahdert and Alison M. Steele of Rahdert, Anderson, McGowan & Steele, St. Petersburg, Florida, on behalf of Nursing Home Abuse Law Center, Inc.; C.L. Darrow, General Counsel, San Ramon, California, and Bruce S. Rogow, Fort Lauderdale, Florida, on behalf of R.W. Lynch Co., Inc.; Howard W. Weber, Tampa, Florida, on behalf of Government Employees Insurance Company; Chandler R. Finley of Finley & Associates, P.A., West Palm Beach, Florida; Richard N. Friedman, Miami, Florida; and David J. Kingsley of Kingsley & Kingsley, Plantation, Florida, Responding.

CORRECTED OPINION
PER CURIAM.
The Florida Bar has petitioned this Court to amend the Rules Regulating The Florida Bar relating to attorney advertising. Notice of the proposed amendments was published in The Florida Bar News, and this Court has received a number of comments in response. We have jurisdiction. See art. V, § 15, Fla. Const.
Based in large part upon recommendations from The Florida Bar's Joint Presidential Advertising Task Force (Task Force), the Bar has proposed creating rules 3-1.3 (Lawyers Admitted in Jurisdictions Other Than Florida) and 15-1.2 (Applicability), both of which relate to this Court's disciplinary authority over non-Florida attorneys who solicit or advertise for legal employment in Florida. The remainder of the Bar's proposed amendments pertain to a comprehensive "overhaul" of subchapter 4-7 (Information About Legal Services).[1] We have received comments and held oral argument on the Bar's petition.
*393 We here discuss some of the proposed changes. We follow this opinion with an appendix which includes changes to the rules which we hereby adopt.

Proposed Rule 3-1.3; Rule 15-1.2
In its petition, the Bar proposes rule 3-1.3 (Lawyers Admitted in Jurisdictions Other Than Florida), a new rule which provides in pertinent part that "lawyers, whether or not admitted to practice law in Florida, who solicit or advertise for legal employment in Florida or who target solicitations or advertisements for legal employment at Florida residents ... must do so only in accordance with the applicable provisions of these Rules Regulating The Florida Bar." (Emphasis added.) Proposed rule 15-1.2 (Applicability) concomitantly subjects such lawyers to this Court's advertising rules and procedures if they "disseminate advertisements within Florida or target advertisements at Florida residents." The Bar advises that these proposed rules stem directly from the offensive and improper practices of some non-Florida attorneys who converged on the survivors of those killed in the ValuJet airplane crash in the Everglades in May of 1996.
We deny the adoption of these proposed rules, as they essentially treat lawyers admitted in other jurisdictions like members of The Florida Bar for the limited purpose of subjecting them to the Rules Regulating The Florida Bar regarding solicitation and advertising. We find the proposed rules unnecessary. Out-of-state lawyers are not lawyers who are subject to the Rules Regulating the Florida Bar;[2] rather, they are "nonlawyers" subject to chapter 10 unlicensed practice of law charges if they, among other things, engage in improper solicitation or advertising in Florida.
Specifically, chapter 10 of the Rules Regulating the Florida Bar (Rules Governing the Investigation and Prosecution of the Unlicensed Practice of Law), provides that "[p]ursuant to the provisions of article V, section 15, of the Florida Constitution, the Supreme Court of Florida has inherent jurisdiction to prohibit the unlicensed practice of law" by nonlawyers. R. Regulating Fla. Bar 10-1.1 (Jurisdiction); see Florida Bar v. Schramek, 616 So.2d 979, 982 (Fla. 1993) (rejecting nonlawyer's argument that this Court's jurisdiction to regulate the practice of law extends only to licensed attorneys); Florida Bar v. Moses, 380 So.2d 412, 417 (Fla.1980) ("Inherent in our supervisory power is the authority to prohibit the unauthorized practice of law."). Chapter 10 explicitly defines "nonlawyer *394 or nonattorney" as "an individual who is not a member of The Florida Bar ... [including] lawyers admitted in other jurisdictions." R. Regulating Fla. Bar 10-2.1(b) (Nonlawyer or Nonattorney) (emphasis added); cf. Preamble to ch. 4, R. Regulating Fla. Bar (A Lawyer's Responsibilities) ("`Lawyer' denotes a person who is a member of The Florida Bar or otherwise authorized to practice in any court of the State of Florida."). Chapter 10 further defines the "unlicensed practice of law" as "the practice of law, as prohibited by statute,[[3]] court rule,[[4]] and case law of the State of Florida." R. Regulating Fla. Bar 10-2.1(a) (Unlicensed Practice of Law).
Our case law is clear that improper solicitation or advertising in Florida by lawyers admitted in other jurisdictions is prohibited as the unlicensed practice of law. For example, in Florida Bar v. Kaiser, 397 So.2d 1132, 1133 (Fla.1981), the referee found a New York attorney guilty of the unauthorized practice of law for implying in telephone-book, television, and newspaper advertising that he was authorized to practice law in Florida. In concluding that the referee's findings of fact regarding the unauthorized practice of law were justified, this Court held:
The record supports the referee's conclusion that [the New York attorney at issue] knew that his advertisements created the impression that he was authorized to practice in Florida on his own, and did not meet the requirements of our most recent pronouncement with respect to the interstate practice of law. See The Florida Bar v. Savitt, 363 So.2d 559 (Fla.1978).[[5]]
. . . .
Accordingly [the New York attorney at issue] is hereby enjoined from any advertising by newspaper, television or otherwise that would tend to mislead the public into believing he is a member of The Florida Bar or authorized to practice in this state....
Kaiser, 397 So.2d at 1133-34; see also Florida Bar v. Tate, 552 So.2d 1106, 1107 (Fla.1989) (enjoining Pennsylvania attorney from representing that he was a member of The Florida Bar; from utilizing any cards, letterhead, or other written material identifying him as attorney at law without otherwise specifying that he was only admitted in Pennsylvania; and from otherwise *395 engaging in the practice of law in Florida); Florida Bar v. Dale, 496 So.2d 813, 815 (Fla.1986) (enjoining Mississippi lawyer from impliedly or expressly holding himself out as licensed to practice law in Florida or from describing himself as a lawyer or attorney, and directing him to remove all indicia of his status as a lawyer from public view in his title company offices). We also call attention to our decision in Chandris, S.A. v. Yanakakis, 668 So.2d 180 (Fla.1995), which rendered void a contingency fee agreement entered into for pursuit of a claim in Florida by an outof-state attorney engaged in the unauthorized practice of law.
Additionally, of course, such lawyers remain subject to the disciplinary authority of the jurisdictions in which they have been admitted. As succinctly stated in the comment to Rule Regulating The Florida Bar 4-8.5 (Jurisdiction), "In modern practice lawyers frequently act outside the territorial limits of the jurisdiction in which they are licensed to practice, either in another state or outside the United States. In doing so, they remain subject to the governing authority of the jurisdiction in which they are licensed to practice." (Emphasis added.) We accordingly reject proposed rules 3-1.3 and 15-1.2, and suggest that the Bar instead develop and submit for approval by this Court proposed amendments amplifying chapter 10 and the rules concerning the unlicensed practice of law in regard to solicitation and advertising by lawyers admitted in other jurisdictions.

Proposed Subchapter Rule 4-7
The Bar has proposed substantial revisions to subchapter 4-7 in the form of both amendments to and a reorganization of the rules thereunder. We generally accept the proposed amendments and reorganization except where we specifically reject the proposed changes.
Our decision as to the rules pertaining to advertising must be within the boundaries of multiple United States Supreme Court decisions on these issues. Our decision is our determination as to the limits of constitutional regulation absent a change in the analysis of the United States Constitution by the United States Supreme Court as applied to this regulation.
Rule 4-7.1, in its existing form, is deleted. Existing rule 4-7.2(a) is essentially moved to rule 4-7.1. We accept this change, except we find no reason to delete "radio, television," as those words are stated in the existing rule 4-7.2(a). Therefore, the words "radio, television" are included in the new rule 4-7.1(a). We also reject the addition to the end of new rule 4-7.1(b) the phrase "and does not concern the provision of legal services within Florida." We conclude that this phrase was placed in this rule to be consistent with the Bar's proposed rule 3-1.3 (Lawyers Admitted in Jurisdictions Other Than Florida), which we have rejected.
As to proposed rule 4-7.2(a)(2), the rule requires a "bona fide office," defined as "a physical location maintained by the lawyer or law firm where the lawyer or law firm reasonably expects to furnish legal services in a substantial way on a regular and continuing basis." Comments contend that this definition of "bona fide office" is too vague and uncertain. We agree with the Bar that this requirement is necessary for the protection of the public relying upon advertisements. We do not find the definition too facially vague or uncertain. This determination, of course, is without prejudice as to any contests of specific applications.
As to proposed rule 4-7.2(c)(7), concerning payment by a nonadvertising lawyer, we accept this provision but clarify that rule 4-1.5(f)(4)(D) (regarding division of contingency fees) is not affected by this provision even though the lawyer covered by rule 4-1.5(f)(4)(D)(ii) advertises.
As to rules 4-7.3 and 4-7.4, we accept the revisions proposed by the Bar.

Proposed Rule 4-7.5(b)
Proposed rule 4-7.5(b) (Appearance on Television or Radio) imposes restrictions *396 on attorney advertising on television and radio. Before more specifically discussing these restrictions, we first address comments filed by the Task Force urging much more drastic action, to-wit, not just restrictions but a prophylactic prohibition on attorney advertising on television and radio.
Based upon several extensive studies and surveys, the Task Force concluded that "lawyer advertising, particularly television and radio advertising, is not providing the public with useful information ... and is lowering the public's regard for the administration of justice in our state." The Task Force accordingly urged the Bar, and now urges this Court, that a complete prohibition on advertising for legal services in the electronic media is "the only practical way to address the problems created by television and radio advertising." The Bar rejected this recommendation in its proposal to this Court; however, it is still urged by the Task Force and in several comments submitted to this Court. We have considered a proposed complete ban and disagree with the Task Force's suggestion that there is "good reason to believe that such a prohibition would withstand constitutional challenge."
As recently stressed by the United States Supreme Court, "[i]t is now well established that lawyer advertising is commercial speech and, as such, is accorded a measure of First Amendment protection." Florida Bar v. Went For It, Inc., 515 U.S. 618, 623, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995). Specifically, restrictions on commercial speech are subject to "intermediate" scrutiny:
Under Central Hudson [Gas & Electric Corp. v. Public Service Comm'n of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)], the government may freely regulate commercial speech that concerns unlawful activity or is misleading. Commercial speech that falls into neither of those categories ... may be regulated if the government satisfies a test consisting of three related prongs: First, the government must assert a substantial interest in support of its regulation; second, the government must demonstrate that the restriction on commercial speech directly and materially advances that interest; and third, the regulation must be "`narrowly drawn.'"
Id. at 623-24, 115 S.Ct. 2371 (citations omitted).
We do not find United States Supreme Court support for a holding that television and radio advertising is, in and of itself, inherently misleading commercial speech that the government can "freely regulate" under Central Hudson. We find that Bates v. State Bar of Arizona, 433 U.S. 350, 372, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), holding in the context of newspaper advertising that "[w]e are not persuaded that restrained professional advertising by lawyers inevitably will be misleading," indicates to the contrary. We further note that in its 1999 term the United States Supreme Court reaffirmed its strong adherence to Central Hudson in Greater New Orleans Broadcasting Association, Inc. v. United States, 527 U.S. 173, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999).
"[S]tate rules [on attorney advertising and solicitation] may be no broader than reasonably necessary to prevent the perceived evil." Florida Bar v. Herrick, 571 So.2d 1303, 1305 (Fla.1990) (citing In re R.M.J., 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982)), cert. denied, 501 U.S. 1205, 111 S.Ct. 2798, 115 L.Ed.2d 972 (1991). Prophylactic prohibitions are by definition broad in nature and have been generally disfavored in the context of attorney advertising and solicitation. Specifically, the United States Supreme Court has held that states may not prophylactically prohibit attorneys from: (1) advertising the costs of certain routine legal services in the print media, see Bates, 433 U.S. at 383, 97 S.Ct. 2691 ("[A]dvertising by attorneys may not be subjected to blanket suppression."); (2) advertising an accurate listing of attorney's areas of practice, either through general mailings, announcements *397 to specific targeted groups, newspaper advertisements, or telephone listings, see R.M.J., 455 U.S. at 203, 102 S.Ct. 929 ("[T]he States may not place an absolute prohibition on certain types of potentially misleading information ... if the information also may be presented in a way that is not deceptive."); (3) advising through the print media target portions of the public of their rights to pursue particular types of cases, as well as the attorney's willingness to handle such litigation, see Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 649, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) ("[B]road prophylactic rules may not be so lightly justified if the protections afforded commercial speech are to retain their force."); (4) directly soliciting through the mail clients with a particular legal problem, see Shapero v. Kentucky Bar Ass'n, 486 U.S. 466, 476, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988) ("[M]erely because targeted, direct-mail solicitation presents lawyers with opportunities for isolated abuses or mistakes does not justify a total ban on that mode of protected commercial speech."); (5) directly soliciting prospective clients where the attorney is motivated by the desire to promote political and ideological goals rather than for purely pecuniary gain, see In re Primus, 436 U.S. 412, 432-33, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978) ("Because of the danger of censorship through selective enforcement of broad prohibitions, and `[b]ecause First Amendment freedoms need breathing space to survive, government may regulate in [this] area only with narrow specificity.'") (quoting NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)); and (6) indicating on letterhead certification as a trial specialist by a recognized national organization, see Peel v. Attorney Registration & Disciplinary Comm'n of Illinois, 496 U.S. 91, 110, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990) ("A State may not ... completely ban statements that are not actually or inherently misleading, such as certification as a specialist by bona fide organizations....") (plurality opinion); see also Ibanez v. Florida Dep't of Bus. and Profl Reg., 512 U.S. 136, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994). See generally Florida Bar Petition to Amend Rules Regulating Florida Bar-Advertising Issues, 571 So.2d 451, 458-59 (Fla.1990) (quoting with approval from Robert D. Peltz, Legal Advertising-Opening Pandora's Box?, 19 Stetson L.Rev. 43, 44 (1989)).
The United States Supreme Court has upheld such a prophylactic prohibition, but only in the context of in-person attorney solicitation motivated by pecuniary gain due to the unique problems associated therewith:
Unlike a public advertisement, which simply provides information and leaves the recipient free to act upon it or not, in-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection. The aim and effect of in-person solicitation may be to provide a one-sided presentation and to encourage speedy and perhaps uninformed decisionmaking; there is no opportunity for the intervention or counter-education by agencies of the Bar, supervisory authorities, or persons close to the solicited individual. The admonition that "the fitting remedy for evil counsels is good ones" is of little value when the circumstances provide no opportunity for any remedy at all. Inperson solicitation is as likely as not to discourage persons needing counsel from engaging in a critical comparison of the "availability, nature, and prices" of legal services; it actually may disserve the individual and societal interest, identified in Bates, in facilitating "informed and reliable decisionmaking."
. . . .
... Unlike the advertising in Bates, in-person solicitation is not visible or otherwise open to public scrutiny. Often there is no witness other than the lawyer and the lay person whom he has solicited, rendering it difficult or impossible to obtain reliable proof of what *398 actually took place. This would be especially true if the lay person were so distressed at the time of the solicitation that he could not recall specific details at a later date. [As such], in-person solicitation would be virtually immune to effective oversight and regulation by the State or by the legal profession, in contravention of the State's strong interest in regulating members of the Bar in an effective, objective, and self-enforcing manner. It therefore is not unreasonable, or violative of the Constitution, for a State to respond with what in effect is a prophylactic rule.
Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 457-67, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) (citation and footnotes omitted); see also Zauderer, 471 U.S. at 641, 105 S.Ct. 2265, 85 L.Ed.2d 652 (characterizing inperson solicitation at issue in Ohralik as "a practice rife with possibilities for overreaching, invasion of privacy, the exercise of undue influence, and outright fraud"); Florida Bar Petition, 571 So.2d at 459 (recognizing under Ohralik that "[s]tates may ... permissibly ... ban in-person solicitation when the attorney is motivated purely for pecuniary gain."). However, none of the unique concerns at issue in Ohralik in the context of in-person solicitation apply in the context of general television and radio advertising directly at issue in the present case.
Nevertheless, "[i]n holding that advertising by attorneys may not be subjected to blanket suppression, ... we, of course, do not hold that advertising by attorneys may not be regulated in any way." Bates, 433 U.S. at 383, 97 S.Ct. 2691. "As with other varieties of speech, it follows as well that there may be reasonable restrictions on the time, place, and manner of [attorney] advertising." Id. at 384, 97 S.Ct. 2691; accord Florida Bar Petition, 571 So.2d at 458. As specifically recognized by the United States Supreme Court in Bates, "the special problems of advertising on the electronic broadcast media will warrant special consideration." 433 U.S. at 384, 97 S.Ct. 2691. This Court has similarly recognized that electronic broadcast media may "require more restrictions than other[ ]" types of media. Florida Bar Petition, 571 So.2d at 458. With these general precepts in mind, we now address some of the restrictions on television and radio advertising advanced by the Bar in proposed rule 4-7.5(b).
The Bar's proposed rule 4-7.5(b) does not completely ban such advertising but rather prohibits advertising on television and radio any information other than the somewhat generic information listed in proposed rule 4-7.2(c)(10).[6] However, as *399 stressed at length above, our primary concern and the evident concern of the United States Supreme Court is the "free flow of commercial information," Zauderer, 471 U.S. at 646, 105 S.Ct. 2265, and, more specifically, the "disclosure of truthful, relevant information." Peel, 496 U.S. at 108, 110 S.Ct. 2281. Indeed, in its comment on proposed rule 4-7.5, the Bar itself references its goal of "not interfering with the free flow of useful information to prospective users of legal services." So severely restricting the information allowed in attorney advertising on television and radio as would be required by proposed rule 4-7.5(b), especially without reference to the touchstones of truth and relevance, we find does not further this goal.
We note that in referencing a strikingly similar "laundry list" of generic information in the print-media context, the United States Supreme Court recognized that "an advertising diet limited to such spartan fare would provide scant nourishment." Bates, 433 U.S. at 367, 97 S.Ct. 2691. We therefore reject rule 4-7.5(b) as proposed by the Bar and substitute in pertinent part: "Advertisements on electronic media such as television and radio may contain, but are not necessarily limited to containing, some or all of the information listed in rule 4-7.2(c)(10)." In so doing, however, we stress that attorneys will of course nevertheless still be prohibited from making false, misleading, or deceptive representations under proposed rule 4-7.2(b) (Prohibited Statements and Information).
Proposed rule 4-7.5(b) also restricts the visual images appearing in television advertisements to "the advertising lawyer in front of a background consisting of a single solid color, a set of law books in an unadorned bookcase, or the lawyer's own office (with no other office personnel shown)." We approve this restriction as it does not significantly impede the flow of truthful and relevant information which, as we have stressed repeatedly in this opinion, serves as our polestar in the attorney advertising context. As we have previously recognized, "the electronic broadcast media, if manipulated, can produce unrealistic images and expectations." Florida Bar Petition, 571 So.2d at 458. We agree with the portion of the Bar's comment to proposed rule 4-7.5 that
the unique characteristics of electronic media, including the pervasiveness of television and radio, the ease with which these media are abused, and the passiveness of the viewer or listener, make the electronic media especially subject to regulation in the public interest. Therefore, greater restrictions on the manner of television and radio advertising are justified than might be appropriate for advertisements in the other media.
Proposed rule 4-7.5(b) also prohibits the voice or image of anyone but a lawyer of the firm whose services are being advertised, even in the context of lawyer referral service advertisements specifically authorized in proposed rule 4-7.11.[7] As commented by the representative of one lawyer referral service that utilizes a spokesperson who is not a lawyer:

*400 Perhaps there's a concern that the public will be misled into thinking that a non-lawyer's "voice" or actor's "image" in a radio/T.V. ad will be that of the very lawyer that they will be engaging or at least one of the lawyers in the advertising firm. If that's the concern, a simple disclosure would surely clarify the situation. Surely, if we permit any one "member" of a multi-person firm to be spokesperson, we leave ourselves open to the same claim: "Hey, you're not the guy on T.V.! I was misled."
. . . .
... As applied to the program we coordinate, [the proposed rule would mean] multiple ads for multiple areas, a proliferation of expense for participants and frequent editing. What if the participant in the ad moves, retires, dies, becomes judge or just drops out of the program? We would continually have to create yet another ad and this would become prohibitive. If this interpretation is accurate, the problem will seriously affect or kill off all similar lawyer referral service advertising.
(Emphasis omitted.) We find these comments to be persuasive and note that it would be inconsistent to allow lawyer referral service advertisements on the one hand under proposed rule 4-7.11 but to disallow the use of spokespersons on the other hand under proposed rule 4-7.5(b). Therefore, we decline to adopt proposed rule 4-7.5(b) in this regard and modify same as reflected in the appendix to this opinion to allow a spokesperson with an appropriate spoken disclosure to speak or appear in a lawyer referral service television or radio advertisement on behalf of the participating attorneys. See Bates, 433 U.S. at 384, 97 S.Ct. 2691 ("We do not foreclose the possibility that some limited supplementation, by way of warning or disclaimer or the like, might be required of [attorney advertising] ... so as to assure that the consumer is not misled.").

Proposed Rule 4-7.10(b)
Proposed rule 4-7.10(b) (Trade Names) prophylactically prohibits the use of trade names by lawyers and law firms. The Bar urges such a prophylactic prohibition because it claims "the use of trade names has proven to be actually and potentially misleading to the public."
The United States Supreme Court has recognized that "[t]he use of trade names... is a form of commercial speech." Friedman v. Rogers, 440 U.S. 1, 11, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979). As already discussed at length above, prophylactic prohibitions on commercial speech by attorneys have been generally disfavored. However, the United States Supreme Court in Friedman upheld a prophylactic prohibition on the use of trade names by optometrists due to specific concerns that were "not speculative or hypothetical" but were "well demonstrated" and "based on experience" establishing that "[t]he possibilities for deception [were] numerous." 440 U.S. at 13-15, 99 S.Ct. 887. For example, The United States Supreme Court in Friedman elaborated that
[t]he trade name of an optometrical practice can remain unchanged despite changes in the staff of optometrists upon whose skill and care the public depends when it patronizes the practice. Thus, the public may be attracted by a trade name that reflects the reputation of an optometrist no longer associated with the practice.
Id. at 13, 99 S.Ct. 887. Significantly, however, this "possibilit[y] for deception" is not entirely alleviated by the prophylactic prohibition urged in the present case, due to an explicit exception thereto. Specifically, proposed rule 4-7.10(b)(4) exempts from this prophylactic prohibition "a law firm practicing as a partnership or authorized business entity that uses as its name or includes in its name the name or names of 1 or more deceased or retired members of the firm or of a predecessor firm in a continuing line of succession." As stated *401 in one comment opposing the prophylactic prohibition on the use of trade names by attorneys:
Nonmisleading or nonfraudulent trade names should be allowed. Keeping former prominent retired or deceased attorneys names in a law firm's moniker has been traditional and allowed but [is] spurious and misleading. It is a fiction and a trade name. The modern appetite for legal specialization, which leads consumers to such specialties, should be encouraged, not discouraged, in order to be consumer friendly.
In further elaborating upon "[t]he [numerous] possibilities for deception," the United States Supreme Court in Friedman continued:
A trade name frees an optometrist from dependence on his personal reputation to attract clients, and even allows him to assume a new trade name if negligence or misconduct casts a shadow over the old one. By using different trade names at shops under his common ownership, an optometrist can give the public the false impression of competition among the shops. The use of a trade name also facilitates the advertising essential to large-scale commercial practices with numerous branch offices, conduct the State rationally may wish to discourage while not prohibiting commercial optometrical practice altogether.
440 U.S. at 13, 99 S.Ct. 887. Significantly, however, none of these weighty "possibilities for deception" are advanced as a justification for the prophylactic prohibition on the use of attorney trade names urged in the present case. As discussed at length below, the concerns and examples cited in the present case are relatively slight in comparison to those at issue in Friedman.
As justification for the prophylactic prohibition urged in the present case, the Bar asserts that "in Florida the use of [trade] names in law practice has proven to be misleading to the public in various ways." In support of this assertion, the Bar relies in significant part on the Task Force's finding that "elements of commonly used trade names, such as `clinic,' `legal services,' and `group,' confuse and mislead the public about the nature of the advertising entity, its level of resources, and the extent of its experience and expertise in the advertised areas of law." In making this finding, the Task Force in turn primarily relied upon the studies prepared on behalf of the Bar by Frank N. Magid Associates (the Magid studies).
We have examined the Magid studies and are not convinced that a prophylactic prohibition on attorney trade names is warranted. While focus group participants indicated that attorney trade names using the term "group" or "center" gave the impression of involving more than one person, "most recognize[d] that the individuals or organizations advertising `could be just one person.'" Frank N. Magid Associates, Attitudes and Impressions of Attorney Advertising: A Summary of Focus Group Results 8 (1997).
Furthermore, to the extent that the Bar impliedly suggests that the use of attorney trade names tarnishes the profession or unreasonably influences potential clients, the Magid studies reveal:
Solid majorities (around 75% to 80%) do not believe any of the [sample attorney trade name] ads influence their respect for the legal system one way or another.... Clear majorities (around 50% to 60%) say they probably or certainly would not retain the entity on the basis of the ad.
Frank N. Magid Associates, Attitudes and Impressions of Attorney Advertising: An Executive Summary of Phase II Results 9 (1997).
Finally and, to our view, most compellingly, the Magid studies reveal that focus group participants perceived that "the specific areas of law mentioned [in the sample attorney trade names] refer to an organization's area of concentration." Frank N. Magid Associates, Attitudes and Impressions of Attorney Advertising: A Summary *402 of Focus Group Results 10 (1997). For example, the focus group participants typically perceived "The Ticket Center" as "specializ[ing] in DUIs and tickets," "[t]hat's all they do." Id. at 8. As stated in one comment filed with this Court:
Contrary to the Bar's assertions, rather than being misleading, this is in fact informative. Clearly a firm named "The Ticket Center" would in fact concentrate on tickets and DUI's as indicated in their print ads. Would a prospective client think to call "The Ticket Center" for a divorce or a will? Obviously not. Clearly the name rather than being misleading as the Bar suggests is informative and indicative of the type of service that the prospective client will receive.
As succinctly stated in a similar comment, "the proposed prohibition would ... severely limit the public's ability to quickly learn information which could narrow the search for a suitable law firm." As more exhaustively phrased in another comment:
Prohibiting the use of trade names impairs the public's understanding of the legal services provided by attorneys. The use of a simple trade name in my practice aids the public in accessing my legal services by helping potential clients understand the area of law I specialize in....
... The widespread advertising by numerous attorneys necessitates a simplified way for those seeking to access legal services to identify attorneys who can help them with their specific problems. A trade name is easy to remember and to refer on to others as opposed to a string of names that is difficult for anyone to recall....
. . . .
... [P]rohibiting the use of a simple trade name in advertising seems to be an unnecessary restriction on advertising content. While false, misleading, or deceptive trade names should clearly be prohibited, a trade name that assists clients in identifying and recalling the attorney who helps them should continue to be permitted in advertisements for legal services.
We also received comments to the effect that "[countless law firms] have relied for 15 years on this court's approval of the use of trade names conditioned only upon the absence of deception. It is manifestly unfair to all who have so relied to shut them down precipitously."
We agree with these and other similar comments filed in opposition to the urged prophylactic prohibition on the use of attorney trade names and reject same as reflected in the appendix to this opinion. Again, as in the television and radio advertising context discussed above, we do so with an eye toward the guiding commercial speech principle that "disclosure of truthful, relevant information is more likely to make a positive contribution to decision-making than is concealment of such information." Peel, 496 U.S. at 108, 110 S.Ct. 2281 (plurality opinion). To the extent that attorney trade names can be informative, "the right involved is that of the consumer to have all information necessary to make an intelligent economic decision." Florida Bar Petition, 571 So.2d at 457 (emphasis removed).
Our decision to reject the urged prophylactic prohibition on attorney trade names is buttressed by the apparent efficacy of the existing restrictions thereon. As phrased in one comment filed in this Court, "The Florida Bar already has at its disposal sufficient tools to deal with misleading trade names. The use of misleading trade names is already prohibited."
More specifically, the existing rules already prohibit false, misleading, or deceptive firm names. See existing rule 4-7.7(a) (False, Misleading, or Deceptive); accord proposed rule 4-7.10(a). For example, under existing rule 4-7.7(a), the Standing Committee on Advertising (SCA) recently found several trade names to be misleading, including "Florida Lawyers Professional Association," "Florida Employment Law Center," "Legal Center for the Injured," *403 and "First American Law." See Advertising Update, Florida Bar News, May 1, 1998, at 26; cf. Florida Bar v. Fetterman, 439 So.2d 835, 840 (Fla.1983) (finding the trade name "The Law Team, Fetterman and Associates" to be "neither inherently nor operatively misleading," and accordingly rejecting the referee's recommendation that the subject attorney be found guilty of violating the Code of Professional Responsibility and enjoined from using the trade name). We explicitly do not comment upon whether we agree with the SCA that the listed trade names are misleading but reference same to underscore the fact that existing rule 4-7.7(a) can be and is already actively applied to regulate attorney trade names in Florida.
Existing rule 4-7.7(b) (Trade Names) similarly allows attorneys to use a trade name so long as it "is not deceptive and does not imply a connection with a government agency or with a public or charitable legal services organization, does not imply that the firm is something other than a private law firm, and is not otherwise [false, misleading, or deceptive]." As even more pertinent to the present case, existing rule 4-7.7(b) further provides that "[a] lawyer in private practice may use the term "legal clinic" or "legal services" in conjunction with the lawyer's own name if the lawyer's practice is devoted to providing routine legal services for fees that are lower than the prevailing rate in the community for those services." See also comment to existing rule 4-7.7 (elaborating that terms such as "academy" and "institute" are precluded because they imply that the firm is something other than a private law firm); Bates, 433 U.S. at 381, 97 S.Ct. 2691 ("We suspect that the public would readily understand the term `legal clinic'if, indeed, it focused on the term at all-to refer to an operation ... that is geared to provide standardized and multiple services."). Insofar as the Bar in the present case has expressed special concern over the use of terms "clinic," "legal services," and "group" in attorney trade names, it may wish to consider further conditions or restrictions on these and other similar terms instead of the urged prophylactic prohibition on all attorney trade names. See id. at 383, 97 S.Ct. 2691 ("In holding that advertising by attorneys may not be subjected to blanket suppression,... we, of course, do not hold that advertising by attorneys may not be regulated in any way.")

Conclusion
As we did in Florida Bar Petition, we again find that these rules, as we have modified them, are narrowly tailored to further a substantial governmental interest since they propose to ensure the truthful dissemination of information by regulating, not prohibiting, legal advertising. 571 So.2d at 460. We commend the Bar, the Task Force, and all those who filed comments for their collective insight and inspiring dedication to the legal profession and the public's perception thereof.
We approve as modified the proposed rules as discussed at length in this opinion and as reflected in the attached appendix. New language is indicated by underscoring; deletions by strike-through type. The committee notes are offered for explanation only and are not adopted as an official part of the rules. The amendments shall become effective upon the release of this opinion.
It is so ordered.
HARDING, C.J., SHAW and ANSTEAD, JJ., and OVERTON and KOGAN, Senior Justices, concur.
OVERTON, Senior Justice, concurs with an opinion, in which ANSTEAD, J., concurs.
WELLS, J., concurs in part and dissents in part with an opinion.
PARIENTE, J., concurs in part and dissents in part with an opinion.
*404 OVERTON, Senior Justice, concurring.
I concur. I write to emphasize that our decision in this case is controlled by seven decisions of the United States Supreme Court on lawyer advertising. See Bates v. State Bar, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978); In re Primus, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978); In re R.M.J., 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982); Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); Shapero v. Kentucky Bar Ass'n, 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988); and Florida Bar v. Went For It, Inc., 515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995). In our decision, Florida Bar Petition to Amend Rules Regulating Florida BarAdvertising Issues, 571 So.2d 451 (Fla.1990), we discussed the legal principles of commercial free speech and lawyer advertising in accordance with the United States Supreme Court decisions. At the time, our advertising rules adopted in that case were considered to be among the most restrictive in the country. The rules we adopted in that case, and in particular the rule prohibiting attorneys from targeting direct mail advertising to victims of personal injury less than thirty days after the incident, were challenged before the United States Supreme Court. In its decision in Florida Bar v. Went For It, Inc., 515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995), our rules were approved because they followed the underlying principle that they did not adversely affect the disclosure of truthful, relevant information and because the thirty-day ban targeting direct-mail solicitation of accident victims concerned sensitive privacy issues resulting from a "lawyer's confrontation of victims or relatives with ... information, while wounds are still open, in order to solicit their business." 515 U.S. at 630, 115 S.Ct. 2371. The Supreme Court emphasized that this restriction involved only "a brief period" amounting to a "short temporal ban" that was "narrow both in scope and in duration." Id. at 633-35, 115 S.Ct. 2371.
I find the rules we adopt today are as far as we can go under the established commercial free speech principles enunciated by the United States Supreme Court. To go further as suggested by the dissent would, in my view, threaten the validity of the entire regulatory scheme.
At this point in time, it is not whether I would like to severely restrict or abolish lawyer advertising to enhance professionalism, it is what advertising restrictions are constitutionally permissible under the provisions and guidelines set out by the United States Supreme Court.
ANSTEAD, J., concurs.
WELLS, J., concurring in part and dissenting in part.
I concur with that portion of the majority opinion which adopts the Bar's proposed amendments to the rules with the exception of the following two issues.
First, I dissent from the majority's rejection (op. at 400) of the Bar's proposed prohibition in rule 7.5(b) of the voice or image as it pertains to lawyer referral services. I would make an exception for lawyer referral services authorized under rule 7-4.11 but only so as to allow an employee of the service to be used in lieu of a lawyer. I would not allow a spokesperson. What is being addressed by the Bar's proposal is the use of celebrity advertisements, which do not further the legitimate purposes of lawyer advertising.
Second, I would adopt the Bar's proposal on trade names. However, I would provide a thirty-six-month compliance period rather than eighteen months because of the concerns raised about lawyers who have expended money developing a trade name. I would use this period of time to work out in more detail what trade names would be permitted. I have to conclude that the use of what can only be termed unprofessional trade names is inherently *405 misleading and, more importantly, brings disrespect to the judicial system. There should simply be no place for the use of names designed to give the impression that the lawyer can "fix" a traffic ticket, as do some names presently, or which are used merely to obtain the first listing in the telephone yellow pages. I do not find offensive to the enforcement of this rule the exception in the Bar's proposed rule for law firm names which have historical roots in real past partners.
I reiterate my strongly held view that we must not have advertising regulations which are not enforced or are selectively enforced. Commercial free speech is a valuable right, but it should be limited so that the courts receive the public respect which the functioning of the court system requires, and such limitation must fairly and effectively limit all Florida lawyersnot just those who voluntarily comply.
PARIENTE, J., concurring in part and dissenting in part.
I concur with the majority opinion except for the following:
I agree with Justice Wells' concurring in part and dissenting in part opinion as to his comments on trade names. As discussed by Justice Wells, I would adopt the Bar's proposal on trade names, but I would also extend the compliance period to thirty-six months, rather than eighteen months.
My greater concern with the majority's opinion, however, has to do with its modifications of the Bar's proposed amendments regarding television and radio advertising in rule 4-7.5(b), entitled "Advertisements in the Electronic Media, Other Than Computer-Accessed Communications." The majority's modification is a significant one in that it changes the Bar's proposed amendment that states:
Advertisements on the electronic media such as television and radio shall contain no information other than some or all of that listed in rule 4-7.2(c)(10).
Rather, the majority substitutes this proposal with the following:
Advertisements on the electronic media such as television and radio may contain, but are not necessarily limited to containing, some or all of the information listed in rule 4-7.2(c)(10).
By changing "shall" to "may ... but ... not necessarily limited to," the majority has changed a critical element of the Bar's proposed amendment. Instead of incorporating the specific list of guidelines that precisely limit what may be included in television or radio advertisements, the majority's modification to rule 4-7.2(b) contains no limitation on what may be included in an advertisement other than that the advertisement may not be "unsubstantiated," "unfair or deceptive," "false or misleading," or "potentially false or misleading." This standard is no different than the limitation already in existence. See R. Regulating Fla. Bar 4-7.3(f)(1)-(5) (superseded by the amendments in this opinion).
In my opinion, the information provided in the Bar's proposed amendment is sufficiently inclusive to satisfy the public's need for information and is sufficiently definite to be enforceable. In contrast, the Court's substitution that prohibits false, misleading, or deceptive advertising is in reality so general as to run the risk of either selective enforcement or no enforcement whatsoever. Further, because no pre-screening requirement is included or practical, once the electronic advertisement has been aired the damage to the public will have been done.
The Bar's proposed amendment itself was a compromise from the original Task Force recommendation. After a year and a half of careful study, the Task Force concluded that a complete prohibition on advertisements for legal services in the electronic media was the only practical way to address the problems created by television advertising and that such a prohibition would withstand constitutional scrutiny. The Task Force commissioned a national research firm to determine to *406 what extent lawyer advertising was adversely affecting the administration of justice. The resulting research showed that:
[L]awyer advertising simply does not provide the public with the useful, factual information that it wants and needs in order to make an informed choice about the hiring of a lawyer. Significantly, the data further shows that much lawyer advertisingespecially television advertisinglowers the public's respect for the fairness and integrity of the legal system.[8]
This Court has acknowledged before and acknowledges again here that electronically broadcast advertising requires more restrictions than other forms of advertising. See Florida Bar Petition to Amend Rules Regulating Florida Bar, 571 So.2d 451, 458 (Fla.1990). In fact, our comment to our amended rule 4-7.5 recognizes that
the unique characteristics of electronic media, including the pervasiveness of television and radio, the ease with which these media are abused, and the passiveness of the viewer or listener, make the electronic media especially subject to regulation in the public interest. Therefore, greater restrictions on the manner of television and radio advertising are justified than might be appropriate for advertisements in the other media.
Indeed, as the United States Supreme Court recognized, "the special problems of advertising on the electronic broadcast media will warrant special consideration." Bates v. State Bar of Arizona, 433 U.S. 350, 384, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).
This Court cannot oversee how the electronic media portrays the judicial system and the legal profession, nor can we control the content of television programs such as Judge Judy and Ally McBeal. We do have the authority, however, to regulate lawyer advertising. If we are not prepared to ban television advertising completely, as the Task Force recommended, I find no valid reason for this Court's rejection of the carefully crafted amendment proposed by the Bar. In my opinion, the Bar's proposed amendment provides the proper structure for the ruleto limit electronic advertising to information that assists the consumer in making informed choices as to representation while ensuring that the advertising does not further contribute to the erosion of public trust and confidence in our judicial system.

APPENDIX
4-7. INFORMATION ABOUT LEGAL SERVICES

RULE 4-7.1 COMMUNICATIONS CONCERNING A LAWYER'S SERVICES GENERAL
A lawyer shall not make or permit to be made a false, misleading, deceptive, or unfair communication about the lawyer or the lawyer's services. A communication violates this rule if it:
(a) contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading; Permissible Forms of Advertising. Subject to all the requirements set forth in this subchapter 4-7, including the filing requirements of rule 4-7.7, a lawyer may advertise services through public media, including but not limited to: print media, such as a telephone directory, legal directory, newspaper or other periodical; outdoor advertising, such as billboards and other signs; radio, television, and computer-accessed communications; recorded messages the public may access by dialing a telephone number; and written communication in accordance with rule 4-7.4.
*407 (b) is likely to create an unjustified expectation about results the lawyer can achieve or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law; Advertisements Not Disseminated in Florida. These rules shall not apply to any advertisement broadcast or disseminated in another jurisdiction in which the advertising lawyer is admitted if such advertisement complies with the rules governing lawyer advertising in that jurisdiction and is not intended for broadcast or dissemination within the state of Florida.
(c) compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated; or
(d) contains a testimonial.

Comment
This rule governs all communications about a lawyer's services, including advertising permitted by rule 4-7.2. Whatever means are used to make known a lawyer's services, statements about them must be truthful. This precludes any material misrepresentation or misleading omission, such as where a lawyer states or implies certification or recognition as a specialist other than in accordance with rule 4-7.5, where a lawyer implies that any court, tribunal, or other public body or official can be improperly influenced, or where a lawyer advertises a particular fee or a contingency fee without disclosing whether the client will also be liable for costs. Another example of a misleading omission is an advertisement for a law firm that states that all the firm's lawyers are juris doctors but does not disclose that a juris doctorate is a law degree rather than a medical degree of some sort and that virtually any law firm in the United States can make the same claim. Although rule 4-7.2 permits lawyers to list the jurisdictions and courts to which they are admitted, it also would be misleading for a lawyer who does not list other jurisdictions or courts to state that the lawyer is a member of The Florida Bar. Standing by itself, that otherwise truthful statement implies falsely that the lawyer possesses a qualification not common to virtually all lawyers practicing in Florida. The latter 2 examples of misleading omissions also are examples of unfair advertising.
The prohibition in subdivision (b) of statements that may create "unjustified expectations" precludes advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer's record in obtaining favorable verdicts, and advertisements containing client endorsements or testimonials. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.
The prohibition in subdivision (c) of comparisons that cannot be factually substantiated would preclude a lawyer from representing that the lawyer or the lawyer's law firm is "the best," "one of the best," or "one of the most experienced" in a field of law.
The prohibition in subdivision (d) would preclude endorsements or testimonials because they are inherently misleading to a person untrained in the law. Potential clients are likely to infer from the testimonial that the lawyer will reach similar results in future cases. Because the lawyer cannot directly make this assertion, the lawyer is not permitted to indirectly make that assertion through the use of testimonials.
To assist the public in obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. The public's need to know about legal services can be fulfilled in part through advertising that provides the public with useful, factual information about legal rights and needs and the availability and terms of legal services from a particular lawyer or law firm. This need is particularly acute in the case of persons of *408 moderate means who have not made extensive use of legal services. Nevertheless, certain types of advertising by lawyers create the risk of practices that are misleading or overreaching and can create unwarranted expectations by persons untrained in the law. Such advertising can also adversely affect the public's confidence and trust in our judicial system.
In order to balance the public's need for useful information, the state's need to ensure a system by which justice will be administered fairly and properly, as well as the state's need to regulate and monitor the advertising practices of lawyers, and a lawyer's right to advertise the availability of the lawyer's services to the public, these rules permit public dissemination of information concerning a lawyer's name or firm name, address, and telephone number; the kinds of services the lawyer will undertake; the basis on which the lawyer's fees are determined, including prices for specific services and payment and credit arrangements; a lawyer's foreign language ability; names of references and, with their consent, names of clients regularly represented; and other factual information that might invite the attention of those seeking legal assistance.
Regardless of medium, a lawyer's advertisement should provide only useful, factual information presented in a nonsensational manner. Advertisements utilizing slogans or jingles, oversized electrical and neon signs, or sound trucks fail to meet these standards and diminish public confidence in the legal system.
These rules do not prohibit communications authorized by law, such as notice to members of a class in class action litigation.
These rules apply to advertisements and written communications directed at prospective clients and concerning a lawyer's or law firm's availability to provide legal services. These rules do not apply to communications between lawyers, including brochures used for recruitment purposes.

4-7.2 ADVERTISING COMMUNICATIONS CONCERNING A LAWYER'S SERVICES
The following shall apply to any communication conveying information about a lawyer's or a law firm's services:
(a) Permissible Forms of Advertising. Subject to all the requirements set forth in this subchapter 4-7, including the filing requirements of rule 4-7.5, a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, billboards and other signs, radio, television, and recorded messages the public may access by dialing a telephone number, or through written communication not involving solicitation as defined in rule 4-7.4. These rules shall not apply to any advertisement broadcast or disseminated in another jurisdiction in which the advertising lawyer is admitted if such advertisement complies with the rules governing lawyer advertising in that jurisdiction and is not intended for broadcast or dissemination within the State of Florida. Required Information.
(1) Name of Lawyer or Lawyer Referral Service. All advertisements and written communications pursuant to these rules shall include the name of at least 1 lawyer or the lawyer referral service responsible for their content.
(2) Location of Practice. All advertisements and written communications provided for under these rules shall disclose, by city or town, 1 or more bona fide office locations of the lawyer or lawyers who will actually perform the services advertised. If the office location is outside a city or town, the county in which the office is located must be disclosed. A lawyer referral service shall disclose the geographic area in which the lawyer practices when a referral is made. For the purposes of this rule, a bona fide office is defined as a physical location maintained by the lawyer *409 or law firm where the lawyer or law firm reasonably expects to furnish legal services in a substantial way on a regular and continuing basis. If an advertisement or written communication lists a telephone number in connection with a specified geographic area other than an area containing a bona fide office, appropriate qualifying language must appear in the advertisement.
(b) Single Voice Requirement; Employee of Lawyer or Law Firm. Advertisements on the electronic media such as television and radio may contain the same factual information and illustrations as permitted in advertisements in the print media, but the information shall be articulated by a single voice, with no background sound other than instrumental music. The voice may be that of a full-time employee of the firm whose services are advertised; it shall not be that of a celebrity whose voice is recognizable to the public. The lawyer or full-time employee of the firm whose services are being advertised may appear on screen or on radio. Prohibited Statements and Information.
(1) Statements About Legal Services. A lawyer shall not make or permit to be made a false, misleading, deceptive, or unfair communication about the lawyer or the lawyer's services. A communication violates this rule if it:
(A) contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading;
(B) contains any reference to past successes or results obtained or is otherwise likely to create an unjustified expectation about results the lawyer can achieve except as allowed in the rule regulating information about a lawyer's services provided upon request;
(C) states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law;
(D) compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated; or
(E) contains a testimonial.
(2) Misleading or Deceptive Factual Statements. Any factual statement contained in any advertisement or written communication or any information furnished to a prospective client under this rule shall not:
(A) be directly or impliedly false or misleading;
(B) be potentially false or misleading;
(C) fail to disclose material information necessary to prevent the information supplied from being actually or potentially false or misleading;
(D) be unsubstantiated in fact; or
(E) be unfair or deceptive.
(3) Descriptive Statements. A lawyer shall not make statements describing or characterizing the quality of the lawyer's services in advertisements and written communications; provided that this provision shall not apply to information furnished to a prospective client at that person's request or to information supplied to existing clients.
(4) Prohibited Visual and Verbal Portrayals. Visual or verbal descriptions, depictions, or portrayals of persons, things, or events must be objectively relevant to the selection of an attorney and shall not be deceptive, misleading, or manipulative.
(5) Advertising Areas of Practice. A lawyer or law firm shall not advertise for legal employment in an area of practice in which the advertising lawyer or law firm does not currently practice law.
(c) Name of Lawyer or Lawyer Referral Service. All advertisements and writ ten communications pursuant to these rules shall include the name of at least 1 lawyer or the lawyer referral service responsible for their content. General Regulations Governing Content of Advertisements.
*410 (1) Use of Illustrations. All illustrations used in advertisements shall present information that is directly related and objectively relevant to a viewer's possible need for legal services in a specific type of matter. Such illustrations shall be still pictures or drawings and shall contain no features that are likely to deceive, mislead, or confuse the viewer.
(2) Fields of Practice. Every advertisement and written communication that indicates 1 or more areas of law in which the lawyer or law firm practices shall conform to the requirements of subdivision (c)(3) of this rule.
(3) Communication of Fields of Practice. A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is a specialist except that a lawyer who complies with the Florida certification plan as set forth in chapter 6, Rules Regulating The Florida Bar, or who is certified by an organization whose specialty certification program has been accredited by the American Bar Association may inform the public and other lawyers of the lawyer's certified areas of legal practice and may state in communications to the public that the lawyer is a "specialist in (area of certification)."
(4) Disclosure of Liability For Expenses Other Than Fees. Every advertisement and written communication that contains information about the lawyer's fee, including those that indicate no fee will be charged in the absence of a recovery, shall disclose whether the client will be liable for any expenses in addition to the fee.
(5) Period for Which Advertised Fee Must be Honored. A lawyer who advertises a specific fee or range of fees for a particular service shall honor the advertised fee or range of fees for at least 90 days unless the advertisement specifies a shorter period; provided that, for advertisements in the yellow pages of telephone directories or other media not published more frequently than annually, the advertised fee or range of fees shall be honored for no less than 1 year following publication.
(6) Firm Name. A lawyer shall not advertise services under a name that violates the provisions of rule 4-7.10.
(7) Payment by Nonadvertising Lawyer. No lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm. Rule 4-1.5(f)(4)(D) (regarding the division of contingency fees) is not affected by this provision even though the lawyer covered by rule 4-1.5(f)(4)(D)(ii) advertises.
(8) Payment for Recommendations; Lawyer Referral Service Fees. A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertising or written or recorded communication permitted by these rules, may pay the usual charges of a lawyer referral service or other legal service organization, and may purchase a law practice in accordance with rule 4-1.17.
(9) Language of Required Statements. Any words or statements required by this subchapter to appear in an advertisement or direct mail communication must appear in the same language in which the advertisement appears. If more than 1 language is used in an advertisement or direct mail communication, any words or statements required by this subchapter must appear in each language used in the advertisement or direct mail communication.
(10) Permissible Content of Advertisements. The following information in advertisements and written communications shall be presumed not to violate the provisions of subdivision (b)(1) of this rule:
(A) subject to the requirements of this rule and rule 4-7.10, the name of the lawyer or law firm, a listing of lawyers associated with the firm, office locations and parking arrangements, disability accommodations, telephone numbers, Web site addresses, *411 and electronic mail addresses, office and telephone service hours, and a designation such as "attorney" or "law firm";
(B) date of admission to The Florida Bar and any other bars, years of experience practicing law, number of lawyers in the advertising law firm, and a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice;
(C) technical and professional licenses granted by the state or other recognized licensing authorities and educational degrees received, including dates and institutions;
(D) foreign language ability;
(E) fields of law in which the lawyer practices, including official certification logos, subject to the requirements of subdivisions (c)(2) and (c)(3) of this rule;
(F) prepaid or group legal service plans in which the lawyer participates;
(G) acceptance of credit cards;
(H) fee for initial consultation and fee schedule, subject to the requirements of subdivisions (c)(4) and (c)(5) of this rule;
(I) a listing of the name and geographic location of a lawyer or law firm as a sponsor of a public service announcement or charitable, civic, or community program or event;
(J) common salutary language such as "best wishes", "good luck", "happy holidays", or "pleased to announce"; and
(K) a lawyer referral service may advertise its name, location, telephone number, the referral fee charged, its hours of operation, the process by which referrals are made, the areas of law in which referrals are offered, the geographic area in which the lawyers practice to whom those responding to the advertisement will be referred, and, if applicable, its nonprofit status, its status as a lawyer referral service approved by The Florida Bar, and the logo of its sponsoring bar association.
(d) Disclosure Statement. Except as provided in this subdivision, all advertisements other than lawyer referral service disclosure: "The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience." Lawyer referral service advertisements shall contain the following disclosure: "The hiring of a lawyer is an important decision. Before you decide to hire the lawyer to whom you are referred, ask that lawyer for written information about that lawyer's qualifications and experience." These disclosures need not appear in electronic advertisements or advertisements in the public print media that contain no illustrations and no information other than that listed in subdivision (n)(1) (11) of this rule.
(e) Dramatizations Prohibited. There shall be no dramatization in any advertisement in any medium.
(f) Use of Illustrations. Illustrations used in advertisements shall present information that can be factually substantiated and is not merely self-laudatory.
(g) Fields of Practice. Every advertisement and written communication that indicates 1 or more areas of law in which the lawyer or law firm practices shall conform to the requirements of rule 4-7.6.
(h) Disclosure of Liability For Expenses Other Than Fees. Every advertisement and written communication that contains information about the lawyer's fee, including those that indicate no fee will be charged in the absence of a recovery, shall disclose whether the client will be liable for any expenses in addition to the fee. Additionally, advertisements and written communications indicating that the charging of a fee is contingent on outcome or that the fee will be a percentage of the *412 recovery shall disclose (1) that the client will be liable for expenses regardless of outcome, if the lawyer so intends to hold the client liable; and (2) whether the percentage fee will be computed before expenses are deducted from the recovery, if the lawyer intends to compute the percentage fee before deducting the expenses.
(i) Period for Which Advertised Fee Must be Honored. A lawyer who advertises a specific fee or range of fees for a particular service shall honor the advertised fee or range of fees for at least 90 days unless the advertisement specifies a shorter period; provided that, for advertisements in the yellow pages of telephone directories or other media not published more frequently than annually, the advertised fee or range of fees shall be honored for no less than 1 year following publication.
(j) Self-laudatory Statements. A lawyer shall not make statements that are merely self-laudatory or statements do scribing or characterizing the quality of the lawyer's services in advertisements and written communications; provided that this provision shall not apply to information furnished to a prospective client at that person's request or to information supplied to existing clients.
(k) Firm Name. A lawyer shall not advertise services under a name that violates the provisions of rule 4-7.7.
(l) Location of Practice. All advertisements and written communications provided for under these rules shall disclose the geographic location, by city or town, of the office in which the lawyer or lawyers who will actually perform the services advertised principally practice law. If the office location is outside a city or town, the county in which the office is located must be disclosed. A lawyer referral service shall disclose the geographic area in which the lawyer practices when a referral is made.
(m) Payment by Nonadvertising Lawyer. No lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm unless the advertisement discloses the name and address of the nonadvertising lawyer, the relationship between the advertising lawyer and the nonadvertising lawyer, and whether the advertising lawyer may refer any case received through the advertisement to the nonadvertising lawyer.
(n) Permissible Content of Advertisements. The following information in advertisements and written communications shall be presumed not to violate the provisions of rule 4-7.1;
(1) subject to the requirements of this rule and rule 4-7.7, the name of the lawyer or law firm, a listing of lawyers associated with the firm, office locations and parking arrangements, disability accommodations, telephone numbers, and electronic mail addresses, office and telephone service hours, and a designation such as "attorney" or "law firm";
(2) date of admission to The Florida Bar and any other bars, years of experience practicing law, and a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice;
(3) technical and professional licenses granted by the state or other recognized licensing authorities and educational degrees received, including dates and institutions;
(4) foreign language ability;
(5) fields of law in which the lawyer practices, including official certification logos, subject to the requirements of rule 4-7.6;
(6) prepaid or group legal service plans in which the lawyer participates;
(7) acceptance of credit cards;
(8) fee for initial consultation and fee schedule, subject to the requirements of subdivisions (h) and (i) of this rule;
(9) a listing of the name and geographic location of a lawyer or law firm as a sponsor *413 of a public service announcement or charitable, civic, or community program or event;
(10) common salutary language such as "best wishes", "good luck", "happy holidays", or "pleased to announce"; and
(11) a lawyer referral service may advertise its name, location, telephone number, the referral fee charged, its hours of operation, the process by which referrals are made, the areas of law in which referrals are offered, the geographic area in which the lawyers practice to whom those responding to the advertisement will be referred, and, if applicable, its nonprofit status, its status as a lawyer referral service approved by The Florida Bar, and the logo of its sponsoring bar association.
(o) Advertising in Law Directory. Nothing in this rule prohibits a lawyer or law firm from permitting the inclusion in law lists and law directories intended primarily for the use of the legal profession of such information as has traditionally been included in these publications.
(p) Maintaining Copies of Advertisements. A copy or recording of an advertisement or written or recorded communication shall be submitted to the standing committee on advertising in accordance with the requirements of rule 4-7.5, and the lawyer shall retain a copy or recording for 3 years after its last dissemination along with a record of when and where it was used.
(q) Payment for Recommendations; Lawyer Referral Service Fees. A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertising or written or recorded communication permitted by these rules, may pay the usual charges of a lawyer referral service or other legal service organization, and may purchase a law practice in accordance with rule 4-1.17.
(r) Language of Required Statements. Any words or statements required by this rule, rule 4-7.3, or rule 4-7.4 to appear in an advertisement or direct mail communication must appear in the same language in which the advertisement appears. If more than 1 language is used in an advertisement or direct mail communication, any words or statements required by this rule, rule 4-7.3, or rule 4-7.4 must appear in each language used in the advertisement or direct mail communication.

Comment
To assist the public in obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. The public's need to know about legal services can be fulfilled in part through advertising that provides the public with useful, factual information about legal rights and needs and the availability and terms of legal services from a particular lawyer or law firm. This need is particularly acute in the case of persons of moderate means who have not made extensive use of legal services. Nevertheless, certain types of advertising by lawyers create the risk of practices that are misleading or overreaching and can create unwarranted expectations by persons untrained in the law. Such advertising can also adversely affect the public's confidence and trust in our judicial system.
In order to balance the public's need for useful information, the state's need to ensure a system by which justice will be administered fairly and properly, as well as the state's need to regulate and monitor the advertising practices of lawyers, and a lawyer's right to advertise the availability of the lawyer's services to the public, this rule permits public dissemination of information concerning a lawyer's name or firm name, address, and telephone number; the kinds of services the lawyer will undertake; the basis on which the lawyer's fees are determined, including prices for specific services and payment and credit arrangements; a lawyer's foreign language *414 ability; names of references and, with their consent, names of clients regularly represented; and other factual information that might invite the attention of those seeking legal assistance.
Television is now one of the most powerful media for conveying information to the public; a blanket prohibition against television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. However, the unique characteristics of electronic media, including the pervasiveness of television and radio, the ease with which these media are abused, and the passiveness of the viewer or listener, make the electronic media especially subject to regulation in the public interest. Therefore, greater restrictions on the manner of television and radio advertising are justified than might be appropriate for advertisements in the other media. To prevent abuses, including potential interferences with the fair and proper administration of justice and the creation of incorrect public perceptions or assumptions about the manner in which our legal system works, and to promote the public's confidence in the legal profession and this country's system of justice while not interfering with the free flow of useful information to prospective users of legal services, it is necessary also to restrict the techniques used in television and radio advertising.
Subdivisions (b) and (e) of this rule are designed to ensure that the advertising is not misleading and does not create unreasonable or unrealistic expectations about the results the lawyer may be able to obtain in any particular case, and to encourage a focus on providing useful information to the public about legal rights and needs and the availability and terms of legal services. Thus, the rule allows all lawyer advertisements in which the lawyer personally appears to explain a legal right, the services the lawyer is available to perform, and the lawyer's background and experience.
This rule governs all communications about a lawyer's services, including advertising permitted by this subchapter. Whatever means are used to make known a lawyer's services, statements about them must be truthful. This precludes any material misrepresentation or misleading omission, such as where a lawyer states or implies certification or recognition as a specialist other than in accordance with this rule, where a lawyer implies that any court, tribunal, or other public body or official can be improperly influenced, or where a lawyer advertises a particular fee or a contingency fee without disclosing whether the client will also be liable for costs. Another example of a misleading omission is an advertisement for a law firm that states that all the firm's lawyers are juris doctors but does not disclose that a juris doctorate is a law degree rather than a medical degree of some sort and that virtually any law firm in the United States can make the same claim. Although this rule permits lawyers to list the jurisdictions and courts to which they are admitted, it also would be misleading for a lawyer who does not list other jurisdictions or courts to state that the lawyer is a member of The Florida Bar. Standing by itself, that otherwise truthful statement implies falsely that the lawyer possesses a qualification not common to virtually all lawyers practicing in Florida. The latter 2 examples of misleading omissions also are examples of unfair advertising.

Prohibited information
The prohibition in subdivision (b)(1)(B) of statements that may create "unjustified expectations" precludes advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer's record in obtaining favorable verdicts, and advertisements containing client endorsements or testimonials. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.
The prohibition in subdivision (b)(1)(D) of comparisons that cannot be factually substantiated would preclude a lawyer *415 from representing that the lawyer or the lawyer's law firm is "the best," "one of the best," or "one of the most experienced" in a field of law.
The prohibition in subdivision (b)(1)(E) precludes endorsements or testimonials, whether from clients or anyone else, because they are inherently misleading to a person untrained in the law. Potential clients are likely to infer from the testimonial that the lawyer will reach similar results in future cases. Because the lawyer cannot directly make this assertion, the lawyer is not permitted to indirectly make that assertion through the use of testimonials.
The prohibition is subdivision (b) against any background sound other than instrumental music precludes, for example, the sound of sirens or car crashes and the use of jingles. Subdivision 4-7.1(d) forbids use of testimonials or endorsements from clients or anyone else. Subdivision (e)(b)(4) prohibits dramatizations visual or verbal descriptions, depictions, or portrayals in any advertisement, including those appearing on the electronic media. This is intended to preclude the use of scenes which createing suspense, scenes or containing exaggerations or appeals to the emotions, situations calling for legal services, scenes or create ing consumer problems through characterization and dialogue ending with the lawyer solving the problem, and the audio or video portrayal of an event or situation. While informational I I illustrations may attract attention to the advertisement and help potential clients to understand the advertisement, permitted under Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985), self-laudatory illustrations are informational and not misleading, and are therefore permissible inherently misleading and thus prohibited. As an example, a drawing of a fist, to suggest the lawyer's ability to achieve results, would not be informational and would be barred. Examples of permissible illustrations would include a graphic rendering of the scales of justice to indicate that the advertising attorney practices law, a picture of the lawyer, or a map of the office location.
Regardless of medium, a lawyer's advertisement should provide only useful, factual information presented in a nonsensational manner. Advertisements utilizing slogans or jingles, oversized electrical and neon signs, or sound trucks fail to meet these standards and diminish public confidence in the legal system.
The disclosure required by subdivision (d) of this rule is designed to encourage the informed selection of a lawyer. As provided in rule 4-7.3, a prospective client is entitled to know the experience and qualifications of any lawyer seeking to represent the prospective client. The required disclosure would be ineffective if it appeared in an advertisement so briefly or minutely as to be overlooked or ignored. Thus in print advertisements, the type size used for the disclosure must be sufficient to cause the disclosure to be conspicuous; in recorded advertisements, the disclosure must be spoken at a speed that allows comprehension by the average listener. This rule does not specify the exact type size to be used for the disclosure or the exact speed at which the disclosure may be spoken; good faith and common sense should serve as adequate guides for any lawyer.
Neither this rule nor rule 4-7.4 prohibits communications authorized by law, such as notice to members of a class in class action litigation.
This rule applies to advertisements and written communications directed at prospective clients and concerning a lawyer's or law firm's availability to provide legal services. The rule does not apply to communications between lawyers, including brochures used for recruitment purposes.

Communication of fields of practice
This rule permits a lawyer or law firm to indicate areas of practice in communications *416 about the lawyer's or law firm's services, such as in a telephone directory or other advertising, provided the advertising lawyer or law firm actually practices in those areas of law at the time the advertisement is disseminated. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, no lawyer who is not certified by The Florida Bar or an organization having substantially the same standards may be described to the public as a "specialist" or as "specializing."

Paying others to recommend a lawyer
A lawyer is allowed to pay for advertising permitted by this rule and for the purchase of a law practice in accordance with the provisions of rule 4-1.17, but otherwise is not permitted to pay or provide other tangible benefits to another person for procuring professional work. However, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may participate in lawyer referral programs and pay the usual fees charged by such programs, subject, however, to the limitations imposed by rule 4-7.811. Subdivision (q)(c)(8) does not prohibit paying regular compensation to an assistant, such as a secretary or advertising consultant, to prepare communications permitted by this rule.

RULE 4-7.3 LEGAL SERVICE INFORMATION ADVERTISEMENTS IN THE PUBLIC PRINT MEDIA
(a) Information Regarding Qualifications. Each lawyer or law firm that advertises the lawyer's or law firm's availability to provide legal services shall have available in written form for delivery to any potential client: Generally. Advertisements disseminated in the public print media are subject to the requirements of rule 4-7.2.
(1) a factual statement detailing the background, training, and experience of each lawyer or the law firm;
(2) if the lawyer or law firm claims special expertise in the representation of clients in special matters or publicly limits the lawyer's or law firm's practice to special types of cases or clients, written information setting forth the factual details of the lawyer's experience, expertise, background, and training in such matters.
(b) Information to be Included in Written Communications. A lawyer or law firm that advertises services by written communication not involving solicitation, as defined in rule 4-7.4, shall enclose with each such written communication the information described in subdivision (a) of this rule.Disclosure Statement. Except as otherwise provided in this subdivision, all advertisements other than lawyer referral service advertisements shall contain the following disclosure: "The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience." Lawyer referral service advertisements shall contain the following disclosure: "The hiring of a lawyer is an important decision. Before you decide to hire the lawyer to whom you are referred, ask that lawyer for written information about that lawyer's qualifications and experience." Outdoor advertisements may contain, in lieu of the above disclosure, the following abbreviated version: "Before choosing a lawyer, ask for written information about the lawyer's legal qualifications and experience." Disclosure statements must appear in type that is clearly legible and is no smaller than one-fourth of the size of the largest type otherwise appearing in the advertisement. These disclosures, however, need not appear in advertisements in the public print media that contain no illustrations and no information other than that listed in subdivision (c)(10) of rule 4-7.2, or written communications *417 sent in compliance with rule 4-7.4.
(c) Request for Information by Potential Client. Whenever a potential client shall request information regarding a lawyer or law firm for the purpose of making a decision regarding employment of the lawyer or law firm:
(1) The lawyer or law firm shall promptly furnish (by mail if requested) the writ ten information described in subdivision (a).
(2) The lawyer or law firm may furnish such additional factual information regarding the lawyer or law firm deemed valuable to assist the client.
(3) If it is believed that the client is in need of services that will require that the client read and sign a copy of the "Statement of Client's Rights" as required by these rules, then a copy of such statement shall be furnished contemporaneously with the above information.
(4) If the information furnished to the client includes a fee contract, the top of each page of the contract shall be marked "SAMPLE" in red ink in a type size one size larger than the largest type used in the contract and the words "DO NOT SIGN" shall appear on the client signature line.
(d) Retention of Copies of Information. A copy of all information furnished to clients by reason of this rule shall be retained by the lawyer or law firm for a period of 3 years after last regular use of the information.
(e) Disclosure Statement. If the lawyer or law firm advertises its services pursuant to rule 4-7.2, the advertisement shall contain the disclosure set forth in rule 4-7.2(d) unless exempt by the terms of that rule. This disclosure need not appear in written communications under rule 4-7.4, which must be accompanied by a copy of the statement of qualifications and experience described in subdivision (a) of this rule.
(f) Misleading or Deceptive Statements. Any factual statement contained in any advertisement or written communication or any information furnished to a prospective client under this rule shall not:
(1) be directly or impliedly false or misleading;
(2) be potentially false or misleading;
(3) fail to disclose material information necessary to prevent the information supplied from being actually or potentially false or misleading;
(4) be unsubstantiated in fact; or
(5) be unfair or deceptive.
(g) Proof of Statements or Claims. Upon reasonable request by The Florida Bar, a lawyer shall promptly provide proof that any statement or claim made in any advertisement or written communication, as well as the information furnished to a prospective client as authorized or required by these rules, is in compliance with subdivision (f) above.
(h) Disclosure of Intent to Refer Matter to Another Lawyer or Law Firm. A statement and any information furnished to a prospective client, as authorized by subdivision (a) of this rule, that a lawyer or law firm will represent a client in a particular type of matter, without appropriate qualification, shall be presumed to be misleading if the lawyer reasonably believes that a lawyer or law firm not associated with the originally retained lawyer or law firm will be associated or act as primary counsel in representing the client. In determining whether the statement is misleading in this respect, the history of prior conduct by the lawyer in similar matters may be considered.

Comment
Consumers and potential clients have a right to receive factual, objective information from lawyers who are advertising *418 their availability to handle legal matters. The rule provides that potential clients may request such information and be given an opportunity to review that information without being required to come to a lawyer's office to obtain it. Selection of appropriate counsel is based upon a number of factors. However, selection can be enhanced by potential clients having factual information at their disposal for review and comparison.
The disclosure required by this rule is designed to encourage the informed selection of a lawyer. A prospective client is entitled to know the experience and qualifications of any lawyer seeking to represent the prospective client. The required disclosure would be ineffective if it appeared in an advertisement so briefly or minutely as to be overlooked or ignored. Thus the type size to be used for the disclosure is specified to ensure that the disclosure will be conspicuous.

RULE 4-7.4 DIRECT CONTACT WITH PROSPECTIVE CLIENTS
(a) Solicitation. Except as provided in subdivision (b) of this rule, A a lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. A lawyer shall not permit employees or agents of the lawyer to solicit in the lawyer's behalf. A lawyer shall not enter into an agreement for, charge, or collect a fee for professional employment obtained in violation of this rule. The term "solicit" includes contact in person, by telephone, telegraph, or facsimile, or by other communication directed to a specific recipient and includes (i) any written form of communication directed to a specific recipient and not meeting the requirements of subdivision (b) of this rule, and (ii) any electronic mail communication directed to a specific recipient and not meeting the requirements of subdivision (c) of rule 4-7.6.

(b) Written Communication.
(1) A lawyer shall not send, or knowingly permit to be sent, on the lawyer's behalf or on behalf of the lawyer's firm or partner, an associate, or any other lawyer affiliated with the lawyer or the lawyer's firm, a written communication directly or indirectly to a prospective client for the purpose of obtaining professional employment if:
(A) the written communication concerns an action for personal injury or wrongful death or otherwise relates to an accident or disaster involving the person to whom the communication is addressed or a relative of that person, unless the accident or disaster occurred more than 30 days prior to the mailing of the communication;
(B) the written communication concerns a specific matter and the lawyer knows or reasonably should know that the person to whom the communication is directed is represented by a lawyer in the matter;
(C) it has been made known to the lawyer that the person does not want to receive such communications from the lawyer;
(D) the communication involves coercion, duress, fraud, overreaching, harassment, intimidation, or undue influence;
(E) the communication contains a false, fraudulent, misleading, deceptive, or unfair statement or claim or is improper under subdivision (b)(1) of rule 4-7.1 4-7.2; or
(F) the lawyer knows or reasonably should know that the physical, emotional, or mental state of the person makes it unlikely that the person would exercise reasonable judgment in employing a lawyer.
(2) Written communications to prospective clients for the purpose of obtaining professional employment are subject to the following requirements:
(A) Each page of such written communications shall be plainly marked "advertisement" in red ink, and the lower left corner *419 of the face of the envelope containing a written communication likewise shall carry a prominent, red "advertisement" mark. If the written communication is in the form of a self-mailing brochure or pamphlet, the "advertisement" mark in red ink shall appear on the address panel of the brochure or pamphlet. Brochures solicited by clients or prospective clients need not contain the "advertisement" mark.Written communications to a prospective client are subject to the requirements of rule 4-7.2.
(B) A copy of each such written communication and a sample of the envelopes in which the communications are enclosed shall be filed with the standing committee on advertising either prior to or concurrently with the mailing of the communication to a prospective client, as provided in rule 4-7.5. The lawyer also shall retain a copy of each written communication for 3 years. If identical written communications are sent to 2 or more prospective clients, the lawyer may comply with this requirement by filing 1 of the indentical written communications and retaining for 3 years a single copy together with a list of the names and addresses of persons to whom the written communication was sent.The first page of such written communications shall be plainly marked "advertisement" in red ink, and the lower left corner of the face of the envelope containing a written communication likewise shall carry a prominent, red "advertisement" mark. If the written communication is in the form of a self-mailing brochure or pamphlet, the "advertisement" mark in red ink shall appear on the address panel of the brochure or pamphlet and on the inside of the brochure or pamphlet. Brochures solicited by clients or prospective clients need not contain the "advertisement" mark.
(C) Written communications mailed to prospective clients shall be sent only by regular U.S. mail, not by registered mail or other forms of restricted delivery.A copy of each such written communication and a sample of the envelopes in which the communications are enclosed shall be filed with the standing committee on advertising either prior to or concurrently with the mailing of the communication to a prospective client, as provided in rule 4-7.7. The lawyer also shall retain a copy of each written communication for 3 years. If identical written communications are sent to 2 or more prospective clients, the lawyer may comply with this requirement by filing 1 of the identical written communications and retaining for 3 years a single copy together with a list of the names and addresses of persons to whom the written communication was sent.
(D) No reference shall be made in the communication to the communication's having received any kind of approval from The Florida Bar.Written communications mailed to prospective clients shall be sent only by regular U.S. mail, not by registered mail or other forms of restricted delivery.
(E) Every written communication shall be accompanied by a written statement of the lawyer's or law firm's qualifications conforming to the requirements of rule 4-7.3. No reference shall be made in the communication to the communication's having received any kind of approval from The Florida Bar.
(F) If a contract for representation is mailed with the written communication, the top of each page of the contract shall be marked "SAMPLE" in red ink in a type size 1 size larger than the largest type used in the contract and the words "DO NOT SIGN" shall appear on the client signature line.Every written communication shall be accompanied by a written statement detailing the background, training and experience of the lawyer or law firm. This statement must include information about the specific experience of the advertising lawyer or law firm in the area or areas of law for which professional employment is sought. Every written communication disseminated by a lawyer referral service shall be accompanied by a written statement detailing the background, training, and experience of each *420 lawyer to whom the recipient may be referred.
(G) The first sentence of any written communication concerning a specific matter shall be: "If you have already retained a lawyer for this matter, please disregard this letter."If a contract for representation is mailed with the written communication, the top of each page of the contract shall be marked "SAMPLE" in red ink in a type size 1 size larger than the largest type used in the contract and the words "DO NOT SIGN" shall appear on the client signature line.
(H) Written communications shall be on letter-sized paper rather than legal-sized paper and shall not be made to resemble legal pleadings or other legal documents. This provision does not preclude the mailing of brochures and pamphlets.The first sentence of any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall be: "If you have already retained a lawyer for this matter, please disregard this letter."
(I) If a lawyer other than the lawyer whose name or signature appears on the communication will actually handle the case or matter, or if the case or matter will be referred to another lawyer or law firm, any written communication concerning a specific matter shall include a statement so advising the client.Written communications shall be on letter-sized paper rather than legal-sized paper and shall not be made to resemble legal pleadings or other legal documents. This provision does not preclude the mailing of brochures and pamphlets.
(J) Any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall disclose how the lawyer obtained the information prompting the communication.If a lawyer other than the lawyer whose name or signature appears on the communication will actually handle the case or matter, or if the case or matter will be referred to another lawyer or law firm, any written communication concerning a specific matter shall include a statement so advising the client.
(K) A written communication seeking employment by a specific prospective client in a specific matter shall not reveal on the envelope, or on the outside of a self-mailing brochure or pamphlet, the nature of the client's legal problem.Any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall disclose how the lawyer obtained the information prompting the communication. The disclosure required by this rule shall be specific enough to help the recipient understand the extent of the lawyer's knowledge regarding the recipient's particular situation.
(L) A written communication seeking employment by a specific prospective client in a specific matter shall not reveal on the envelope, or on the outside of a self-mailing brochure or pamphlet, the nature of the client's legal problem.

Comment
There is a potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services. It subjects the person to the private importuning of a trained advocate, in a direct interpersonal encounter. A prospective client often feels overwhelmed by the situation giving rise to the need for legal services and may have an impaired capacity for reason, judgment, and protective self-interest. Furthermore, the lawyer seeking the retainer is faced with a conflict stemming from the lawyer's own interest, which may color the advice and representation offered the vulnerable prospect.
The situation is therefore fraught with the possibility of undue influence, intimidation, and overreaching. This potential *421 for abuse inherent in direct solicitation of prospective clients justifies the 30-day restriction, particularly since lawyer advertising permitted under these rules 4-7.2 offers an alternative means of communicating necessary information to those who may be in need of legal services.
Advertising makes it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the prospective client to direct personal persuasion that may overwhelm the client's judgment.
The use of general advertising to transmit information from lawyer to prospective client, rather than direct private contact, will help to assure that the information flows cleanly as well as freely. Advertising is out in public view, thus subject to scrutiny by those who know the lawyer. This informal review is itself likely to help guard against statements and claims that might constitute false or misleading communications in violation of rule 4-7.1. Direct private communications from a lawyer to a prospective client are not subject to such third-party scrutiny and consequently are much more likely to approach (and occasionally perhaps cross) the dividing line between accurate representations and those that are false and misleading.
Direct written communications seeking employment by specific prospective clients generally present less potential for abuse or overreaching than in-person solicitation and are therefore not prohibited for most types of legal matters, but are subject to reasonable restrictions, as set forth in this rule, designed to minimize or preclude abuse and overreaching and to ensure lawyer accountability if such should occur. This rule allows targeted mail solicitation of potential plaintiffs or claimants in personal injury and wrongful death causes of action or other causes of action that relate to an accident, disaster, death, or injury, but only if mailed at least 30 days after the incident. This restriction is reasonably required by the sensitized state of the potential clients, who may be either injured or grieving over the loss of a family member, and the abuses that experience has shown exist in this type of solicitation.
Letters of solicitation and their envelopes should must be clearly marked "advertisement." This will avoid the recipient's perceiving that there is a need to open the envelope because it is from a lawyer or law firm, only to find the recipient is being solicited for legal services. With the envelope and letter marked "advertisement," the recipient can choose to read the solicitation, or not to read it, without fear of legal repercussions.
In addition, the lawyer or law firm should reveal the source of information used to determine that the recipient has a potential legal problem. Disclosure of the information source will help the recipient to understand the extent of knowledge the lawyer or law firm has regarding the recipient's particular situation and will avoid misleading the recipient into believing that the lawyer has particularized knowledge about the recipient's matter if the lawyer does not.
This rule would not prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for its members, insureds, beneficiaries, or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement that the lawyer or the lawyer's law firm is willing to offer. This form of communication is not directed to a specific prospective client known to need legal services related to a particular matter. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity that the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally *422 similar to and serve the same purpose as advertising permitted under other rules 4-7.2 in this subchapter.

RULE 4-7.5 EVALUATION OF ADVERTISEMENTS ADVERTISEMENTS IN THE ELECTRONIC MEDIA OTHER THAN COMPUTER-ACCESSED COMMUNICATIONS
(a) Advisory Opinion. A lawyer may obtain an advisory opinion concerning the compliance of a contemplated advertisement or written communication with these rules in advance of disseminating the advertisement or communication by submitting the material and fee specified in subdivision (d) to the standing committee on advertising at least 15 days prior to such dissemination. If the committee finds that the advertisement complies with these rules, the lawyer's voluntary submission shall be deemed to satisfy the filing requirement set forth in subdivision (b) of this rule.Generally. With the exception of computer-based advertisements (which are subject to the special requirements set forth in rule 4-7.6), all advertisements in the electronic media, including but not limited to television and radio, are subject to the requirements of rule 4-7.2.
(b) Filing Copy of Advertisement. Subject to the exemptions stated in subdivision (c) of this rule, any lawyer who advertises services through any public media or through written communication not involving solicitation as defined in rule 4-7.4 shall file a copy of each such advertisement with the standing committee on advertising for evaluation of compliance with these rules. The copy shall be filed either prior to or concurrently with the lawyer's first dissemination of the advertisement or written communication and shall be accompanied by the information and fee specified in subdivision (d).Appearance on Television or Radio. Advertisements on the electronic media such as television and radio may contain, but are not necessarily limited to containing, some or all of the information listed in rule 4-7.2(c)(10). The information shall be articulated by a single human voice, or on-screen text, with no background sound other than instrumental music. No person's voice or image, other than that of a lawyer who is a member of the firm whose services are advertised, may be used in a television or radio advertisement. Visual images appearing in a television advertisement shall be limited to the advertising lawyer in front of a background consisting of a single solid color, a set of law books in an unadorned bookcase, or the lawyer's own office (with no other office personnel shown). A limited exception applies to lawyer referral service advertisements permitted under rule 4-7.11, insofar as a non-attorney spokesperson may speak or appear on behalf of the participating attorneys in television or radio advertisements. If such a spokesperson is used, the spokesperson shall provide a spoken disclosure identifying herself or himself as a spokesperson and disclosing that she or he is not an attorney. Television and radio advertisements by lawyer referral services are otherwise subject to the requirements of this rule.
(c) Exemptions from Filing Requirement. The following are exempt from the filing requirements of subdivision (b) of this rule:
(1) Any advertisement in any of the public media, including the yellow pages of telephone directories, that contains no illustrations and no information other than that set forth in rule 4-7.2(n)(1)-(11). This exemption extends to television advertisements only if the visual display featured in such advertisements is limited to the words spoken by the announcer.
(2) A brief announcement in any of the public media that identifies a lawyer or law firm as a contributor to a specified charity or as a sponsor of a public service announcement or a specified charitable, community, or public interest program, activity, or event, provided that the announcement contains no information about *423 the lawyer or law firm other than name, the city where the law offices are located, and the fact of the sponsorship or contribution. In determining whether an announcement is a public services announcement for purposes of this rule and rule 4-7.2(n)(9), the following are criteria that may be considered:
(A) whether the content of the announcement appears to serve the particular interests of the lawyer or law firm as much as or more than the interests of the public;
(B) whether the announcement contains information concerning the lawyer's or law firm's area of practice, legal background, or experience;
(C) whether the announcement contains the address or telephone number of the lawyer or law firm;
(D) whether the announcement concerns a legal subject;
(E) whether the announcement contains legal advice; and
(F) whether the lawyer or law firm paid to have the announcement published.
(3) A listing or entry in a law list or bar publication.
(4) A newsletter mailed only to existing clients, former clients, or other lawyers.
(5) Any written communications requested by a prospective client.
(6) Professional announcement cards stating new or changed associations, new offices, and similar changes relating to a lawyer or law firm, and that are mailed only to other lawyers, relatives, close personal friends, former clients, and existing clients.
(d) Contents of Filing. A filing with the committee as required by subdivision (b) or as permitted by subdivision (a) shall consist of:
(1) a copy of the advertisement or communication in the form or forms in which it is to be disseminated (e.g., videotapes, audiotapes, print media, photographs of outdoor advertising);
(2) a transcript, if the advertisement or communication is on videotape or audiotape;
(3) a statement listing all media in which the advertisement or communication will appear, the anticipated frequency of use of the advertisement or communication in each medium in which it will appear, and the anticipated time period during which the advertisement or communication will be used; and
(4) a fee paid to The Florida Bar, in an amount of $100 for submissions timely filed as provided in subdivisions (a) or (b), or $250 for submissions not timely filed. This fee shall be used to offset the cost of evaluation and review of advertisements submitted under these rules and the cost of enforcing these rules.
(e) Evaluation of Advertisements. The committee shall evaluate all advertisements and written communications filed with it pursuant to this rule for compliance with the applicable rules set forth in this subchapter 4-7. The committee shall complete its evaluation within 15 days of receipt of a filing unless the committee determines that there is reasonable doubt that the advertisement or written communication is in compliance with the rules and that further examination is warranted but cannot be completed within the 15-day period, and so advises the lawyer within the 15-day period. In the latter event, the committee shall complete its review as promptly as the circumstances reasonably allow. If the committee does not send any communication to the lawyer within 15 days, the advertisement will be deemed approved.
(f) Substantiating Information. If requested to do so by the committee, the filing lawyer shall submit information to substantiate representations made or implied in that lawyer's advertisement or written communication.
(g) Notice of Noncompliance; Effect of Continued Use of Advertisement. *424 When the committee determines that an (advertisement or written communication is not in compliance with the applicable rules, the committee shall advise the lawyer that dissemination or continued dissemination of the advertisement or written communication may result in professional discipline.
(h) Committee Determination Not Binding; Evidence. A finding by the committee of either compliance or noncompliance shall not be binding in a grievance proceeding, but may be offered as evidence.
(i) Change of Circumstances; Refiling Requirement. If a change of circumstances occurring subsequent to the committee's evaluation of an advertisement or written communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of the change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with the committee along with an explanation of the change in circumstances and an additional fee set by the board of governors but not exceeding $100.

Comment
This rule has a dual purpose: to enhance the court's and the bar's ability to monitor advertising practices for the protection of the public and to assist members of the bar to conform their advertisements to the requirements of these rules. This rule gives lawyers the option of submitting their advertisements to the committee for review prior to first use or submitting their advertisements at the time of first use. In either event, the committee will advise the filing lawyer in writing whether the advertisement appears to comply with the rules. The committee's opinion will be advisory only, but may be considered as evidence of a good faith effort to comply with these rules. A lawyer who wishes to be able to rely on the committee's opinion as demonstrating the lawyer's good faith effort to comply with these rules has the responsibility of supplying the committee with all information material to a determination of whether an advertisement is false or misleading.
In The Florida Bar v. Doe, 634 So.2d 160 (Fla.1994), the court recognized the need for specific guidelines to aid lawyers and the bar in determining whether a particular announcement in the public media is a public service announcement as contemplated in the rule and rule 4-7.2(n). Subdivisions (c)(2)(A)-(F) of this rule respond to the court's concern by setting forth criteria that, while not intended to be exclusive, provide the needed guidance. With the exception of subdivision (c)(2)(C), these criteria are based on factors considered by the court in Doe.
Television is now one of the most powerful media for conveying information to the public; a blanket prohibition against television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. However, the unique characteristics of electronic media, including the pervasiveness of television and radio, the ease with which these media are abused, and the passiveness of the viewer or listener, make the electronic media especially subject to regulation in the public interest. Therefore, greater restrictions on the manner of television and radio advertising are justified than might be appropriate for advertisements in the other media. To prevent abuses, including potential interferences with the fair and proper administration of justice and the creation of incorrect public perceptions or assumptions about the manner in which our legal system works, and to promote the public's confidence in the legal profession and this country's system of justice while not interfering with the free flow of useful information to prospective users of legal services, it is necessary also to restrict the techniques used in television and radio advertising.
This rule is designed to ensure that the advertising is not misleading and does not create unreasonable or unrealistic expectations about the results the lawyer may be *425 able to obtain in any particular case, and to encourage the provision of useful information to the public about the availability and terms of legal services. Thus, the rule allows lawyer advertisements in which a lawyer who is a member of the advertising firm personally appears to speak regarding the legal services the lawyer or law firm is available to perform, the fees to be charged for such services, and the background and experience of the lawyer or law firm. A firm partner or shareholder, of course, is a "member" of a law firm within the intent of the rule; likewise, a lawyer who is a law firm associate as defined in The Florida Bar v. Fetterman, 439 So.2d 835 (Fla.1983) is a firm "member." Whether other lawyers are "members" of a firm for purposes of this rule must be evaluated in light of criteria that include whether the lawyer's practice is physically located at the firm and whether the lawyer practices solely through the firm. There should be a presumption that lawyers other than partners, shareholders, or associates are not "members" of a law firm for purposes of this rule.

RULE 4-7.6 COMMUNICATION OF FIELDS OF PRACTICECOMPUTER-ACCESSED COMMUNICATIONS
A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is a specialist except as follows:
(a) Patent Practice. A lawyer admitted to engage in patent practice before the United States patent and trademark office may use the designation "patent attorney" or a substantially similar designation.Definition. For purposes of this subchapter, "computer-accessed communications" are defined as information regarding a lawyer's or law firm's services that is read, viewed, or heard directly through the use of a computer. Computer-accessed communications include, but are not limited to, Internet presences such as home pages or World Wide Web sites, unsolicited electronic mail communications, and information concerning a lawyer's or law firm's services that appears on World Wide Web search engine screens and elsewhere.
(b) Certified Lawyers. A lawyer who complies with the Florida certification plan as set forth in chapter 6, Rules Regulating The Florida Bar, or who is certified by an organization whose specialty certification program has been accredited by the American Bar Association may inform the public and other lawyers of the lawyer's certified areas of legal practice and may state in communications to the public that the lawyer is a "specialist in (area of certification)." Internet Presence. All World Wide Web sites and home pages accessed via the Internet that are controlled or sponsored by a lawyer or law firm and that contain information concerning the lawyer's or law firm's services:
(1) shall disclose all jurisdictions in which the lawyer or members of the law firm are licensed to practice law;
(2) shall disclose 1 or more bona fide office locations of the lawyer or law firm, in accordance with subdivision (a)(2) of rule 4-7.2; and
(3) are considered to be information provided upon request and, therefore, are otherwise governed by the requirements of rule 4-7.9.
(c) Electronic Mail Communications. A lawyer shall not send, or knowingly permit to be sent, on the lawyer's behalf or on behalf of the lawyer's firm or partner, an associate, or any other lawyer affiliated with the lawyer or the lawyer's firm, an unsolicited electronic mail communication directly or indirectly to a prospective client for the purpose of obtaining professional employment unless:
(1) the requirements of subdivisions (b)(1), (b)(2)(A), (b)(2)(E), (b)(2)(G), (b)(2)(H), (b)(2)(J), and (b)(2)(K) of rule 4-7.4 are met;
(2) the communication discloses 1 or more bona fide office locations of the lawyer or lawyers who will actually perform *426 the services advertised, in accordance with subdivision (a)(2) of rule 4-7.2; and
(3) the subject line of the communication states "legal advertisement."
(d) Advertisements. All computer-accessed communications concerning a lawyer's or law firm's services, other than those subject to subdivisions (b) and (c) of this rule, are subject to the requirements of rule 4-7.2.

Comment
This rule permits a lawyer to indicate areas of practice in communications about the lawyer's services, such as in a telephone directory or other advertising. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, no lawyer who is not certified by The Florida Bar or an organization having substantially the same standards may be described to the public as a "specialist" or as "specializing."
Advances in telecommunications and computer technology allow lawyers to communicate with other lawyers, clients, prospective clients, and others in increasingly quicker and more efficient ways. Regardless of the particular technology used, however, a lawyer's communications with prospective clients for the purpose of obtaining professional employment must meet standards designed to protect the public from false, deceptive, misleading, or confusing messages about lawyers or the legal system and to encourage the free flow of useful legal-related information to the public.
The specific regulations that govern computer-accessed communications differ according to the particular variety of communication employed. For example, a lawyer's Internet web site is accessed by the viewer upon the viewer's initiative and, accordingly, the standards governing such communications correspond to the rules applicable to information provided to a prospective client at the prospective client's request.
In contrast, unsolicited electronic mail messages from lawyers to prospective clients are functionally comparable to direct mail communications and thus are governed by similar rules. Additionally, communications advertising or promoting a lawyer's services that are posted on search engine screens or elsewhere by the lawyer, or at the lawyer's behest, with the hope that they will be seen by prospective clients are simply a form of lawyer advertising and are treated as such by the rules.
This rule is not triggered merely because someone other than the lawyer gratuitously links to, or comments on, a lawyer's Internet web site.

RULE 4-7.7 FIRM NAMES AND LETTERHEADSEVALUATION OF ADVERTISEMENTS
(a) False, Misleading, or Deceptive. A lawyer shall not use a firm name, letterhead, or other professional designation that violates rule 4-7.1. Filing and Advisory Opinion. Subject to the exemptions stated in rule 4-7.8, any lawyer who advertises services through any public media or through written communications sent in compliance with rule 4-7.4 shall file a copy of each such advertisement with the standing committee on advertising for evaluation of compliance with these rules. The copy shall be filed either prior to or concurrently with the lawyer's first dissemination of the advertisement or written communication and shall be accompanied by the information and fee specified in subdivision (b) of this rule. A lawyer may obtain an advisory opinion concerning the compliance of a contemplated advertisement or written communication in advance of disseminating the advertisement or communication by submitting the material and fee specified in subdivision (b) of this rule to the standing committee on advertising at least 15 days prior to such dissemination. If the committee finds that the advertisement complies with these rules, the lawyer's voluntary submission *427 shall be deemed to satisfy the filing requirement set forth in this rule.
(b) Trade Names. A lawyer may practice under a trade name if the name is not deceptive and does not imply a connection with a government agency or with a public or charitable legal services organization, does not imply that the firm is something other than a private law firm, and is not otherwise in violation of rule 4-7.1. A lawyer in private practice may use the term "legal clinic" or "legal services" in conjunction with the lawyer's own name if the lawyer's practice is devoted to providing routine legal services for fees that are lower than the prevailing rate in the community for those services.Contents of Filing. A filing with the committee as required or permitted by subdivision (a) shall consist of:
(1) a copy of the advertisement or communication in the form or forms in which it is to be disseminated (e.g., videotapes, audio-tapes, print media, photographs of outdoor advertising);
(2) a transcript, if the advertisement or communication is on videotape or audio-tape;
(3) a sample envelope in which the written communication will be enclosed, if the communication is to be mailed;
(4) a statement listing all media in which the advertisement or communication will appear, the anticipated frequency of use of the advertisement or communication in each medium in which it will appear, and the anticipated time period during which the advertisement or communication will be used; and
(5) a fee paid to The Florida Bar, in an amount of $100 for submissions timely filed as provided in subdivision (a), or $250 for submissions not timely filed. This fee shall be used to offset the cost of evaluation and review of advertisements submitted under these rules and the cost of enforcing these rules.
(c) Advertising under Trade Name. A lawyer shall not advertise under a trade or fictitious name, except that a lawyer who actually practices under a trade name as authorized by subdivision (b) may use that name in advertisements. A lawyer who advertises under a trade or fictitious name shall be in violation of this rule unless the same name is the law firm name that appears on the lawyer's letterhead, business cards, office sign, and fee contracts, and appears with the lawyer's signature on pleadings and other legal documents.Evaluation of Advertisements. The committee shall evaluate all advertisements and written communications filed with it pursuant to this rule for compliance with the applicable rules set forth in this subchapter 4-7. The committee shall complete its evaluation within 15 days of receipt of a filing unless the committee determines that there is reasonable doubt that the advertisement or written communication is in compliance with the rules and that further examination is warranted but cannot be completed within the 15-day period, and so advises the filer within the 15-day period. In the latter event, the committee shall complete its review as promptly as the circumstances reasonably allow. If the committee does not send any communication to the filer within 15 days, the advertisement will be deemed approved.
(d) Law Firm with Offices in More Than 1 Jurisdiction. A law firm with offices in more than 1 jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.Substantiating Information. If requested to do so by the committee, the filing lawyer shall submit information to substantiate representations made or implied in that lawyer's advertisement or written communication.
*428 (e)(e) Name of Public Officer in Firm Name. The name of a lawyer holding a public office shall not be used in the name of a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm.Notice of Noncompliance; Effect of Continued Use of Advertisement. When the committee determines that an advertisement or written communication is not in compliance with the applicable rules, the committee shall advise the lawyer that dissemination or continued dissemination of the advertisement or written communication may result in professional discipline.
(f) Partnerships. Lawyers may state or imply that they practice in a partnership or other organization only when that is the fact.Committee Determination Not Binding; Evidence. A finding by the committee of either compliance or noncompliance shall not be binding in a grievance proceeding, but may be offered as evidence.
(g) Change of Circumstances; Refiling Requirement. If a change of circumstances occurring subsequent to the committee's evaluation of an advertisement or written communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of the change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with the committee along with an explanation of the change in circumstances and an additional fee set by the board of governors but not exceeding $100.
(h) Maintaining Copies of Advertisements. A copy or recording of an advertisement or written or recorded communication shall be submitted to the standing committee on advertising in accordance with the requirements of rule 4-7.7, and the lawyer shall retain a copy or recording for 3 years after its last dissemination along with a record of when and where it was used.

Comment
A firm may be designated by the names of all or some of its members, by the names of deceased members where there has been a continuing succession in the firm's identity, or by a trade name such as "Family Legal Clinic." Although the United States Supreme Court has held that legislation may prohibit the use of trade names in professional practice, use of such names in law practice is acceptable so long as it is not misleading. If a private firm uses a trade name that includes a geographical name such as "Springfield Legal Clinic," an express disclaimer that it is a public legal aid agency may be required to avoid a misleading implication. It may be observed that any firm name including the name of a deceased partner is, strictly speaking, a trade name. The use of such names to designate law firms has proven a useful means of identification. However, it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm.
Subdivision (a) precludes use in a law firm name of terms that imply that the firm is something other than a private law firm. Two examples of such terms are "academy" and "institute." Subdivision (b) precludes use of a trade or fictitious name suggesting that the firm is named for a person when in fact such a person does not exist or is not associated with the firm. An example of such an improper name is "A. Aaron Able." Although not prohibited per se, the terms "legal clinic" and "legal services" would be misleading if used by a law firm that did not devote its practice to providing routine legal services at prices below those, prevailing in the community for like services.
Subdivision (c) of this rule precludes a lawyer from advertising under a nonsense name designed to obtain an advantageous position for the lawyer in alphabetical directory listings unless the lawyer actually practices under that nonsense name. Advertising under a law firm name that differs *429 from the firm name under which the lawyer actually practices violates both this rule and rule 4-7.1
With regard to subdivision (d), lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves as, for example, "Smith and Jones," for that title suggests partnership in the practice of law.This rule has a dual purpose: to enhance the court's and the bar's ability to monitor advertising practices for the protection of the public and to assist members of the bar to conform their advertisements to the requirements of these rules. This rule gives lawyers the option of submitting their advertisements to the committee for review prior to first use or submitting their advertisements at the time of first use. In either event, the committee will advise the filing lawyer in writing whether the advertisement appears to comply with the rules. The committee's opinion will be advisory only, but may be considered as evidence of a good faith effort to comply with these rules. A lawyer who wishes to be able to rely on the committee's opinion as demonstrating the lawyer's good faith effort to comply with these rules has the responsibility of supplying the committee with all information material to a determination of whether an advertisement is false or misleading.

RULE 4-7.8 LAWYER REFERRAL SERVICESEXEMPTIONS FROM THE FILING AND REVIEW REQUIREMENT
The following are exempt from the filing requirements of rule 4-7.7:
(a) When Lawyers May Accept Referrals. A lawyer shall not accept referrals from a lawyer referral service unless the service:
(1) engages in no communication with the public and in no direct contact with prospective clients in a manner that would violate the Rules of Professional Conduct if the communication or contact were made by the lawyer;
(2) receives no fee or charge that constitutes a division or sharing of fees, unless the service is a not-for-profit service approved by The Florida Bar pursuant to chapter 8 of these rules;
(3) refers clients only to persons lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida.
(4) carries or requires each lawyer participating in the service to carry professional liability insurance in an amount not less than $100,000 per claim or occurrence;
(5) furnishes The Florida Bar, on a quarterly basis, with the names and Florida bar membership numbers of all lawyers participating in the service; and
(6) neither represents nor implies to the public that the service is endorsed or approved by The Florida Bar, unless the service is subject to chapter 8 of these rules. Any advertisement in any of the public media, including the yellow pages of telephone directories, that contains no illustrations and no information other than that set forth in subdivision (c)(10) of rule 4-7.2. This exemption extends to television advertisements only if the visual display featured in such advertisements is limited to the words spoken by the announcer.
(b) Definition of Lawyer Referral Service. A "lawyer referral service" is:A brief announcement in any of the public media that identifies a lawyer or law firm as a contributor to a specified charity or as a sponsor of a public service announcement or a specified charitable, community, or public interest program, activity, or event, provided that the announcement contains no information about the lawyer or law firm other than name, the city where the law offices are located, and the fact of the sponsorship or contribution. In determining whether an announcement is a public service announcement for purposes of this rule and subdivision (c)(10)(I) of rule 4-7.2, the following are criteria that may be considered:
*430 (1) any person, group of persons, association, organization, or entity that receives a fee or charge for referring or causing the direct or indirect referral of a potential client to a lawyer drawn from a specific group or panel of lawyers; or whether the content of the announcement appears to serve the particular interests of the lawyer or law firm as much as or more than the interests of the public;
(2) any group or pooled advertising program operated by any person, group of persons, association, organization, or entity wherein the legal services advertisements utilize a common telephone number and potential clients are then referred only to lawyers or law firms participating in the group or pooled advertising program; whether the announcement contains information concerning the lawyer's or law firm's area of practice, legal background, or experience;
(3) whether the announcement contains the address or telephone number of the lawyer or law firm;
(4) whether the announcement concerns a legal subject;
(5) whether the announcement contains legal advice; and
(6) whether the lawyer or law firm paid to have the announcement published.
(c) A listing or entry in a law list or bar publication.
(d) A communication mailed only to existing clients, former clients, or other lawyers.
(e) Any written communications requested by a prospective client.
(f) Professional announcement cards stating new or changed associations, new offices, and similar changes relating to a lawyer or law firm, and that are mailed only to other lawyers, relatives, close personal friends, and existing or former clients.
(g) Computer-accessed communications as described in subdivision (b) of rule 4-7.6.
A pro bono referral program, in which the participating attorneys do not pay a fee or charge of any kind to receive referrals or to belong to the referral panel, and are undertaking the referred matters with out expectation of remuneration, is not a lawyer referral service within the definition of this rule.

Comment
Every citizen of the state should have ready access to the legal system. A person's access to the legal system is enhanced by the assistance of a lawyer qualified to handle that person's legal needs. Many of the citizens of the state who are potential consumers of legal services encounter difficulty in identifying and locating lawyers who are willing and qualified to consult with them about their legal needs. Lawyer referral services can facilitate the identification and intelligent selection of lawyers qualified to render assistance. However, because a potential for abuse exists, the participation of lawyers in referral services must be regulated to ensure protection of the public.
It is in the public interest that a person seeking the assistance of counsel receive accurate information to select or be matched with counsel qualified to render the needed services. Therefore, a lawyer should not participate in a lawyer referral service that communicates misleading information to the public or that directly contacts prospective clients about available legal services in a manner that constitutes impermissible solicitation.
One who avails oneself of legal services is well served only if those services are rendered by a lawyer who exercises independent legal judgment. The division or sharing of a fee risks the creation of an obligation that impairs a lawyer's ability to exercise independent legal judgment. Therefore, the public interest usually compels the ethical prohibition against the division *431 or sharing of fees and that ethical prohibition should likewise apply to the division or sharing of fees with a lawyer referral service. The prohibition does not extend to the lawyer's paying a pre-arranged, fixed-sum participation fee. Furthermore, the prohibition does not apply when the referring agency is a not-for-profit service operated by a bona fide state or local bar association under the supervision of and approved by The Florida Bar in order to ensure that such service fulfills the public-interest purposes of a lawyer referral service and to ensure that the risk of impairment of the lawyer's ability to exercise independent legal judgment is in that circumstance minimal.
It is in the public interest that a person receive legal services only from someone who is qualified to render them. Lawyers should strive to prevent harm resulting from the rendering of legal services by persons not legally qualified to do so. Therefore, a lawyer should not participate in a lawyer referral service that refers clients to persons not lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida.
The quasi-institutionalization of legal services by a lawyer referral service implies that the service has screened the qualifications and financial responsibility of its participating lawyers. That implication may be misleading and does not exist when a prospective client directly selects a lawyer at arm's length. Therefore, it is in the public interest that only lawyers who have established a certain amount of financial responsibility for professional liability participate in a lawyer referral service. Accordingly, a lawyer should participate in a lawyer referral service only if the service requires proof of that financial responsibility.
To enable The Florida Bar to fulfill its obligation to protect the public from unethical or other improper conduct by those who practice law in Florida, The Florida Bar must have available to it the identity of all lawyers participating in a lawyer referral service. Therefore, a lawyer should participate in a lawyer referral service only if the service furnishes The Florida Bar with the names of its participating lawyers.
In The Florida Bar v. Doe, 634 So.2d 160 (Fla.1994), the court recognized the need for specific guidelines to aid lawyers and the bar in determining whether a particular announcement in the public media is a public service announcement as contemplated in this rule and rule 4-7.2. Subdivisions (b)(1)-(6) of this rule respond to the court's concern by setting forth criteria that, while not intended to be exclusive, provide the needed guidance. With the exception of subdivision (b)(3), these criteria are based on factors considered by the court in Doe.

RULE 4-7.9 INFORMATION ABOUT A LAWYER'S SERVICES PROVIDED UPON REQUEST
(a) Generally. Information provided about a lawyer's or law firm's services upon request shall comply with the requirements of rule 4-7.2 unless otherwise provided in this subchapter.
(b) Request for Information by Potential Client. Whenever a potential client shall request information regarding a lawyer or law firm for the purpose of making a decision regarding employment of the lawyer or law firm:
(1) The lawyer or law firm shall promptly furnish (by mail if requested) the written (including computer-accessed) information described in subdivision (c) of this rule.
(2) The lawyer or law firm may furnish such additional factual information regarding the lawyer or law firm deemed valuable to assist the client.
(3) If it is believed that the client is in need of services that will require that the client read and sign a copy of the "Statement of Client's Rights" as required by these rules, then a copy of such statement *432 shall be furnished contemporaneously with the above information.
(4) If the information furnished to the client includes a fee contract, the top of each page of the contract shall be marked "SAMPLE" in red ink in a type size one size larger than the largest type used in the contract and the words "DO NOT SIGN" shall appear on the client signature line.
(5) Notwithstanding the provisions of subdivision (b)(1)(B) of rule 4-7.2, information provided to a potential client in response to a potential client's request may contain factually verifiable statements concerning past results obtained by the lawyer or law firm, if, either alone or in the context in which they appear, such statements are not otherwise misleading.
(c) Information Regarding Qualifications. Each lawyer or law firm that advertises the lawyer's or law firm's availability to provide legal services shall have available in written form for delivery to any potential client:
(1) a factual statement detailing the background, training, and experience of each lawyer or the law firm;
(2) if the lawyer or law firm claims special expertise in the representation of clients in special matters or publicly limits the lawyer's or law firm's practice to special types of cases or clients, written information setting forth the factual details of the lawyer's experience, expertise, background, and training in such matters.
(d) Proof of Statements or Claims. Upon reasonable request by The Florida Bar, a lawyer shall promptly provide proof that any statement or claim made in any advertisement or written communication, as well as the information furnished to a prospective client as authorized or required by these rules, is in compliance with rule 4-7.2.
(e) Disclosure of Intent to Refer Matter to Another Lawyer or Law Firm. A statement and any information furnished to a prospective client, as authorized by subdivision (b) of this rule, that a lawyer or law firm will represent a client in a particular type of matter, without appropriate qualification, shall be presumed to be misleading if the lawyer reasonably believes that a lawyer or law firm not associated with the originally retained lawyer or law firm will be associated or act as primary counsel in representing the client. In determining whether the statement is misleading in this respect, the history of prior conduct by the lawyer in similar matters may be considered.

Comment
Consumers and potential clients often will find it useful to receive factual, objective information from lawyers who are advertising their availability to handle legal matters. The rule provides that potential clients may request such information and be given an opportunity to review that information without being required to come to a lawyer's office to obtain it. Selection of appropriate counsel is based upon a number of factors. However, selection can be enhanced by potential clients having factual information at their disposal for review and comparison.
This rule does not require a lawyer or law firm to provide information concerning the lawyer's or law firm's services when requested if the lawyer or law firm is not interested in representing the person or entity requesting the information.

RULE 4-7.10 FIRM NAMES AND LETTERHEAD
(a) False, Misleading, or Deceptive. A lawyer shall not use a firm name, letterhead, or other professional designation that violates subdivision (b)(1) of rule 4-7.2.
(b) Trade Names. A lawyer may practice under a trade name if the name is not deceptive and does not imply a connection with a government agency or with a public or charitable legal services organization, does not imply that the firm is something *433 other than a private law firm, and is not otherwise in violation of subdivision (b)(1) of rule 4-7.2. A lawyer in private practice may use the term "legal clinic" or "legal services" in conjunction with the lawyer's own name if the lawyer's practice is devoted to providing routine legal services for fees that are lower than the prevailing rate in the community for those services.
(c) Advertising Under Trade Name. A lawyer shall not advertise under a trade or fictitious name, except that a lawyer who actually practices under a trade name as authorized by subdivision (b) may use that name in advertisements. A lawyer who advertises under a trade or fictitious name shall be in violation of this rule unless the same name is the law firm name that appears on the lawyer's letterhead, business cards, office sign, and fee contracts, and appears with the lawyer's signature on pleadings and other legal documents.
(d) Law Firm with Offices in More Than 1 Jurisdiction. A law firm with offices in more than 1 jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.
(e) Name of Public Officer in Firm Name. The name of a lawyer holding a public office shall not be used in the name of a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm.
(f) Partnerships and Authorized Business Entities. Lawyers may state or imply that they practice in a partnership or authorized business entity only when that is the fact.

Comment
A firm may be designated by the names of all or some of its members, by the names of deceased members where there has been a continuing succession in the firm's identity, or by a trade name such as "Family Legal Clinic." Although the United States Supreme Court has held that legislation may prohibit the use of trade names in professional practice, use of such names in law practice is acceptable so long as it is not misleading. If a private firm uses a trade name that includes a geographical name such as "Springfield Legal Clinic," an express disclaimer that it is a public legal aid agency may be required to avoid a misleading implication. It may be observed that any firm name including the name of a deceased partner is, strictly speaking, a trade name. The use of such names to designate law firms has proven a useful means of identification. However, it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm.
Subdivision (a) precludes use in a law firm name of terms that imply that the firm is something other than a private law firm. Two examples of such terms are "academy" and "institute." Subdivision (b) precludes use of a trade or fictitious name suggesting that the firm is named for a person when in fact such a person does not exist or is not associated with the firm. An example of such an improper name is "A. Aaron Able." Although not prohibited per se, the terms "legal clinic" and "legal services" would be misleading if used by a law firm that did not devote its practice to providing routine legal services at prices below those prevailing in the community for like services.
Subdivision (c) of this rule precludes a lawyer from advertising under a nonsense name designed to obtain an advantageous position for the lawyer in alphabetical directory listings unless the lawyer actually practices under that nonsense name. Advertising under a law firm name that differs from the firm name under which the lawyer actually practices violates both this rule and subdivision (b)(1) of rule 4-7.2.
With regard to subdivision (d), lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves *434 as, for example, "Smith and Jones," for that title suggests partnership in the practice of law.

RULE 4-7.11 LAWYER REFERRAL SERVICES
(a) When Lawyers May Accept Referrals. A lawyer shall not accept referrals from a lawyer referral service unless the service:
(1) engages in no communication with the public and in no direct contact with prospective clients in a manner that would violate the Rules of Professional Conduct if the communication or contact were made by the lawyer;
(2) receives no fee or charge that constitutes a division or sharing of fees, unless the service is a not-for-profit service approved by The Florida Bar pursuant to chapter 8 of these rules;
(3) refers clients only to persons lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida;
(4) carries or requires each lawyer participating in the service to carry professional liability insurance in an amount not less than $100,000 per claim or occurrence;
(5) furnishes The Florida Bar, on a quarterly basis, with the names and Florida bar membership numbers of all lawyers participating in the service; and
(6) neither represents nor implies to the public that the service is endorsed or approved by The Florida Bar, unless the service is subject to chapter 8 of these rules.
(b) Responsibility of Lawyer. A lawyer who accepts referrals from a lawyer referral service is responsible for ensuring that any advertisements or written communications used by the service comply with the requirements of the Rules Regulating The Florida Bar, including the provisions of this subchapter.
(c) Definition of Lawyer Referral Service. A "lawyer referral service" is:
(1) any person, group of persons, association, organization, or entity that receives a fee or charge for referring or causing the direct or indirect referral of a potential client to a lawyer drawn from a specific group or panel of lawyers; or
(2) any group or pooled advertising program operated by any person, group of persons, association, organization, or entity wherein the legal services advertisements utilize a common telephone number and potential clients are then referred only to lawyers or law firms participating in the group or pooled advertising program.
A pro bono referral program, in which the participating lawyers do not pay a fee or charge of any kind to receive referrals or to belong to the referral panel, and are undertaking the referred matters without expectation of remuneration, is not a lawyer referral service within the definition of this rule.

Comment
Every citizen of the state should have ready access to the legal system. A person's access to the legal system is enhanced by the assistance of a lawyer qualified to handle that person's legal needs. Many of the citizens of the state who are potential consumers of legal services encounter difficulty in identifying and locating lawyers who are willing and qualified to consult with them about their legal needs. Lawyer referral services can facilitate the identification and intelligent selection of lawyers qualified to render assistance. However, because a potential for abuse exists, the participation of lawyers in referral services must be regulated to ensure protection of the public.
It is in the public interest that a person seeking the assistance of counsel receive accurate information to select or be matched with counsel qualified to render the needed services. Therefore, a lawyer should not participate in a lawyer referral service that communicates misleading information *435 to the public or that directly contacts prospective clients about available legal services in a manner that constitutes impermissible solicitation.
One who avails oneself of legal services is well served only if those services are rendered by a lawyer who exercises independent legal judgment. The division or sharing of a fee risks the creation of an obligation that impairs a lawyer's ability to exercise independent legal judgment. Therefore, the public interest usually compels the ethical prohibition against the division or sharing of fees and that ethical prohibition should likewise apply to the division or sharing of fees with a lawyer referral service. The prohibition does not extend to the lawyer's paying a pre-arranged, fixed-sum participation fee. Furthermore, the prohibition does not apply when the referring agency is a not-for-profit service operated by a bona fide state or local bar association under the supervision of and approved by The Florida Bar in order to ensure that such service fulfills the public-interest purposes of a lawyer referral service and to ensure that the risk of impairment of the lawyer's ability to exercise independent legal judgment is in that circumstance minimal.
It is in the public interest that a person receive legal services only from someone who is qualified to render them. Lawyers should strive to prevent harm resulting from the rendering of legal services by persons not legally qualified to do so. Therefore, a lawyer should not participate in a lawyer referral service that refers clients to persons not lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida.
The quasi-institutionalization of legal services by a lawyer referral service implies that the service has screened the qualifications and financial responsibility of its participating lawyers. That implication may be misleading and does not exist when a prospective client directly selects a lawyer at arm's length. Therefore, it is in the public interest that only lawyers who have established a certain amount of financial responsibility for professional liability participate in a lawyer referral service. Accordingly, a lawyer should participate in a lawyer referral service only if the service requires proof of that financial responsibility.
To enable The Florida Bar to fulfill its obligation to protect the public from unethical or other improper conduct by those who practice law in Florida, The Florida Bar must have available to it the identity of all lawyers participating in a lawyer referral service. Therefore, a lawyer should participate in a lawyer referral service only if the service furnishes The Florida Bar with the names of its participating lawyers.
NOTES
[1] Specifically, the Bar proposes amending or creating: rule 4-7.1 (General); rule 4-7.2 (Communications Concerning a Lawyer's Services); rule 4-7.3 (Advertisements in the Public Print Media); rule 4-7.4 (Direct Contact with Prospective Clients); rule 4-7.5 (Advertisements in the Electronic Media, Other than Computer-Accessed Communications); rule 4-7.6 (Computer-Accessed Communications); rule 4-7.7 (Evaluation of Advertisements); rule 4-7.8 (Exemptions From the Filing and Review Requirement); rule 4-7.9 (Information About a Lawyer's Services Provided Upon Request); rule 4-7.10 (Firm Names and Letterhead); and rule 4-7.11 (Lawyer Referral Services).
[2] Exceptions to this generalization may apply when, for example, attorneys admitted in other jurisdictions are granted permission to appear pro hac vice in particular cases or proceedings in Florida courts. See R. Regulating Fla. Bar 1-3.2(a) (Members in Good Standing) ("A practicing attorney of another state, in good standing, who has professional business in a court of record of this state may, upon motion, be permitted to practice for the purpose of such business upon such conditions as the court deems appropriate under the circumstances of the case."); see also Fla. R. Jud. Admin. 2.060(b) (Foreign Attorneys) (providing that "[a]ttorneys of other states shall not engage in a general practice in Florida unless they are members of The Florida Bar in good standing," but allowing that, upon verified motion, "attorneys of other states may be permitted to appear in particular cases in a Florida court"); see generally Huff v. State, 569 So.2d 1247 (Fla.1990) (discussing discretion of court in ruling on motions to admit pro hac vice). Even then, however, our jurisdiction over such attorneys is limited, as set forth in Rule Regulating the Florida Bar 3-4.1 ("Notice and Knowledge of Rules"):

Every member of The Florida Bar and every attorney of another state who is admitted to practice for the purpose of a specific case before a court of record of this state is within the jurisdiction of this court and its agencies under this rule and is charged with notice and held to know the provisions of this rule and the standards of ethical and professional conduct prescribed by this court. Jurisdiction over an attorney of another state who is not a member of The Florida Bar shall be limited to conduct as an attorney in relation to the business for which the attorney was permitted to practice in this state and the privilege in the future to practice law in the state of Florida.
(Emphasis added.)
[3] For example, section 454.23, Florida Statutes (1997), provides:

Penalties.Any person not licensed or otherwise authorized by the Supreme Court of Florida who shall practice law or assume or hold himself or herself out to the public as qualified to practice in this state, or who willfully pretends to be, or willfully takes or uses any name, title, addition, or description implying that he or she is qualified, or recognized by law as qualified, to act as a lawyer in this state ... shall be guilty of a misdemeanor of the first degree....
See State v. Foster, 674 So.2d 747 (Fla. 1st DCA) (upholding constitutionality of section 454.23), review dismissed, 677 So.2d 840 (Fla. 1996); see also § 877.02, Fla. Stat. (1997) (lawyer anti-solicitation statute); Carricarte v. State, 384 So.2d 1261 (Fla.1980) (upholding constitutionality of section 877.02).
[4] For example, Rule Regulating the Florida Bar 4-5.5 (Unlicensed Practice of Law) provides:

A lawyer shall not:
(a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or
(b) assist a person who is not a member of the bar in the performance of activity that constitutes the unlicensed practice of law.
[5] Florida Bar v. Savitt, 363 So.2d 559 (Fla. 1978), involved unlicensed practice of law charges against an interstate law firm with its principal office in New York and a partner of that firm who, although not a member of The Florida Bar, supervised the Miami office of the firm. This Court adopted and approved the parties' joint motion and stipulation for settlement which, as pertinent to the present case, provided that "in any telephone directory published and used in Florida, the firm shall list only its lawyers who are admitted to practice in Florida," and that "a professional card of a lawyer identifying him by name and as a lawyer, giving his address, may not contain a Florida address if he is not a member of The Florida Bar." Id. at 561-62.
[6] Proposed rule 4-7.2(c)(10) (Permissible Content of Advertisements) does not differ significantly from its predecessor (existing rule 4-7.2(n)) and sets forth a list of somewhat generic information in advertisements and written communications that shall be presumed not to violate the rules regarding false, misleading, deceptive, or unfair communication about a lawyer or the lawyer's services. The information listed includes: the name of the lawyer or law firm, office locations and parking arrangements, disability accommodations, telephone numbers, Web site and electronic mail addresses, office and telephone service hours, a designation such as "attorney" or "law firm," date of admission to The Florida Bar and any other bars, years of experience practicing law, number of lawyers in the advertising firm, a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice, technical and professional licenses granted by the state or other recognized licensing authorities, and educational degrees received (including dates and institutions); foreign language ability, fields of law in which the lawyer practices, including certification logos, prepaid or group legal service plans in which the lawyer participates, acceptance of credit cards, fee for initial consultation and fee schedule, a listing of the name and geographic location of a lawyer or law firm as a sponsor of a public service announcement or charitable, civic, or community program or event, and common salutary language, such as "best wishes," "good luck," "happy holidays," or "pleased to announce." The proposed rule additionally provides that a lawyer referral service may advertise its name, location, telephone number, the referral fee charged, its hours of operation, the process by which referrals are made, the areas of law in which referrals are offered, the geographic area in which the lawyers practice and to whom those responding to the advertisement will be referred, and, if applicable, its nonprofit status, its status as a lawyer referral service approved by The Florida Bar, and the logo of its sponsoring bar association.
[7] Proposed rule 4-7.11 (Lawyer Referral Services) does not differ significantly from its predecessor (existing rule 4-7.8), insofar as both authorize lawyer referral services and in pertinent part identically define a "lawyer referral service" as:

(1) any person, group of persons, association, organization, or entity that receives a fee or charge for referring or causing the direct or indirect referral of a potential client to a lawyer drawn from a specific group or panel of lawyers; or
(2) any group or pooled advertising program operated by any person, group of persons, association, organization, or entity wherein the legal services advertisements utilize a common telephone number and potential clients are then referred only to lawyers or law firms participating in the group or pooled advertising program.
[8] The Task Force also conducted a survey of Florida judges that revealed that 88% of the judges believe that lawyer advertising has adversely affected the public's confidence in the administration of justice, and virtually all of those judges (95%) believe that the effect of lawyer advertising was a negative one.